Basil **YANAKAKIS;** Ira H. **Leesfield; Roger L. Blackburn, d/b/a Leesfield & Blackburn, P.A., a Florida Professional Assoc., Plaintiffs–Appellees,**

v.

**CHANDRIS, S.A., a Foreign Corp.; Chandris, Inc., d/b/a Chandris Cruise Lines, a Foreign Corporation, Defendants–Appellants,**

**Matrona Miliaresis, Nikolas Miliaresis, Defendants,**

**Transport Mutual Services, Inc., a Foreign Corporation, Defendant–Appellant.**

No. 91–5542.

United States Court of Appeals, Eleventh Circuit.

Dec. 27, 1993.

**1510**

David J. Horr, Rodriguez, Horr, Aronson & Blanck, P.A., Miami, FL, Joseph T. Stearns, Kenny & Stearns, New York City, for defendants-appellants.

Joel D. Eaton, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for plaintiffs-appellees.

Before KRAVITCH and COX, Circuit Judges, and HOBBS *, Senior District Judge.

PER CURIAM:

This appeal follows a verdict for the plaintiffs in an action for damages alleging tortious interference with contracts for legal representation. Basil Yanakakis, a Massachusetts attorney, entered into a contingent fee agreement with an injured Greek seaman. Thereafter, Yanakakis entered into a second fee agreement in which the Florida law firm of Leesfield & Blackburn, P.A., was retained to prosecute the seaman's claim. The defendants, Chandris, S.A., Chandris, Inc., and Transport Mutual Services, Inc., are the operators of the ship on which the seaman served and was injured, and its insurer. Defendants allegedly tortiously interfered with plaintiffs' contingent fee agreements with the seaman. The jury returned a verdict in favor of plaintiffs for $600,000 in compensatory damages, $2.6 million in punitive damages against Chandris, S.A. and Chandris, Inc., and $550,000 in punitive damages against Transport Mutual Services, Inc. The district court entered judgment accordingly. Following a procedural imbroglio, the district court denied defendants' post-trial motions.[1]

Defendants raise a myriad of issues on appeal. Among these, defendants contend that the district court erred in denying defendants' cross-motion for summary judgment. If defendants are correct in that assertion, it will be unnecessary to address the other issues presented on appeal.

Prior to trial, plaintiffs moved for partial summary judgment and defendants cross-moved for summary judgment. The defendants argued that an action for tortious interference with business relations could not lie as the fee agreements upon which plaintiffs based their claims were void. First, defendants asserted that by entering into a fee arrangement with the seaman, Yanakakis engaged in the unauthorized practice of law in derogation of Section 454.23, Florida Statutes (1983). The district court denied defendants' motion, finding that Yanakakis's acceptance of the seaman's "authority to represent" was not unauthorized under Florida law and therefore the fee agreement was not void and an action for tortious interference with business relations would lie. The district court found that Yanakakis's conduct fell within the universe of authorized conduct for out-of-state attorneys as defined by the Florida Supreme Court in *The Florida Bar v. Savitt*, 363 So.2d 559 (Fla.1978). We are unable to conclude that *Savitt* resolves the issue. Florida case law does not clearly delineate what acts constitute the unauthorized practice of law by out-of-state attorneys, who reside in Florida, but are not associated with a particular law firm operating in Florida.

Second, defendants argued that the Leesfield & Blackburn fee agreement was void as its genesis was Yanakakis's void agreement. The district court found that even if Yana-

---

* Honorable Truman M. Hobbs, Senior U.S. District Judge for the Middle District of Alabama, sitting by designation.

1. Defendants' post-trial motions were dismissed by the district court as untimely. This court remanded the case to the district court to dispose of defendants' post-trial motions on their merits.

kakis had engaged in the unauthorized practice of law, such conduct would not affect the validity of the Leesfield & Blackburn fee agreement. That is, the district court held that a fee agreement born of a void fee agreement is not itself void under Florida law. Neither the district court, nor any of the parties, cites a Florida case that supports that conclusion, however.

It appears that this case raises issues of first impression under Florida law. The resolution of these important questions of law may be determinative. Additionally, because these issues implicate substantial public policy concerns, we defer our decision in this case pending certification of these questions to the Supreme Court of Florida. Accordingly, we certify two questions to the Florida Supreme Court pursuant to Article V of the Florida Constitution. *See* Fla. Const. art. v, § 3(b)(6).

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA PURSUANT TO ARTICLE V, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION. TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

### I. Facts

Plaintiffs moved for partial summary judgment striking certain affirmative defenses. Defendants cross-moved for summary judgment. The district court granted plaintiffs' motion and accordingly denied defendants' motions. Defendants appeal that denial.[2]

The facts stated herein are essentially undisputed, except as otherwise noted. We resolve any disputed facts in the light most favorable to the plaintiffs who opposed the motion for summary judgment at issue. *See Integon Life Ins. Corp. v. Browning,* 989 F.2d 1143, 1149 (11th Cir.1993). We review a district court's legal conclusions de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231–33, 111 S.Ct. 1217, 1221–22, 113 L.Ed.2d 190 (1991). On review, only that evidence which was before the district court on motion is subject to appellate review. *See Denis v. Liberty Mut. Ins. Co.,* 791 F.2d 846, 849 (11th Cir.1986).[3]

On October 3, 1984, Nikolas Miliaresis (hereinafter "Miliaresis"), a Greek seaman, was injured while the ship on which he worked was docking in Cozumel, Mexico. Miliaresis was airlifted to a hospital in Miami, Florida, where his leg was amputated. (Affidavit of Nikolas Miliaresis at 1.)

Basil Yanakakis, at the request of a Greek Orthodox priest, visited Miliaresis, who spoke little English, at Jackson Memorial Hospital in Miami, Florida. Yanakakis was born in Greece. He was admitted to the Massachusetts Bar in 1964. Between 1964 and 1979, Yanakakis practiced law and taught at Suffolk Law School. He specialized in international and maritime law. In addition, Yanakakis was admitted to practice before the United States District Court of Massachusetts, the First Circuit Court of Appeals, the United States Court of Customs and Patent Appeals, the United States Tax Court, and the United States Supreme Court. In 1980, however, Yanakakis discontinued the practice of law and moved to Florida where he established his domicile. Upon moving to Florida, he became involved in real estate and managed personal investments. Yanakakis is not, and has never been, a member of the

---

**2.** To state a truism, we review rulings not cases. It is difficult to discern from defendants' briefs what rulings they seek to review. Chandris, S.A., and Chandris, Inc., assert that "[t]he court erred by failing to dismiss plaintiffs' claim because contracts which are illegal and violate Florida public policy cannot be tortiously interfered with." (Appellants' Brief at 11.) Similarly, Transport Mutual Services, Inc., argues that "[t]he court's failure to dismiss appellees' complaint was error because contracts which are illegal or violative of Florida public policy cannot be tortiously interfered with." (Appellants' Brief at 33.) We conclude that the defendants seek to review the district court's denial of their motions for summary judgment, not the district court's grant of plaintiffs' motion.

**3.** As to the issue of the unauthorized practice of law, the district court primarily had before it the deposition of Basil Yanakakis dated September 21, 1989, the deposition of Mark Dresnick dated January 22, 1991, the affidavits of Nikolas and Gerasimos Miliaresis dated January 25, 1991, and copies of the two contingent fee agreements at issue.

Florida Bar. (Yanakakis Deposition at 3–26.)

Yanakakis met with Miliaresis in the hospital on several occasions. During those visits Miliaresis learned that Yanakakis was a member of the Massachusetts Bar. Yanakakis told Miliaresis that he was not a member of the Florida Bar. (*Id.* at 23–41.)[4] On October 16, 1984, Miliaresis signed a retainer agreement written in English and titled "Authority to Represent" which stated that Miliaresis retained "BASIL S. YANAKAKIS, ATTORNEY from the Commonwealth of Massachusetts as my attorney to represent me...." The retainer agreement did not state that Yanakakis was not licensed to practice in Florida. (Plaintiffs' Memorandum of Law in Support of its Motion for Partial Summary Judgment Exh. 4.) Yanakakis told Miliaresis he would represent him and find a local attorney for him. (Yanakakis Deposition at 39.)[5] Additionally, at some point, Yanakakis gave Miliaresis's brother a label that stated: "Basil S. Yanakakis, Attorney at law, Suite 801 New World Tower, 100 North Biscayne Boulevard, Miami, Florida 33132." (Affidavit of Gerasimos Miliaresis at 2.)

In November of 1984, Yanakakis contacted Ira H. Leesfield to discuss retaining Leesfield & Blackburn, P.A., for prosecution of Miliaresis's claim. Pursuant to arrangements made between Yanakakis and Leesfield, an attorney from that firm met with Miliaresis. At that time, Miliaresis orally retained the Leesfield firm to assist Yanakakis. (Yanakakis Deposition at 48–55.) Soon thereafter, the firm initiated an investigation of Miliaresis's claim. (Dresnick Deposition at 106.) On March 18, 1985, Miliaresis executed an agreement retaining "the Law Offices of Leesfield and Blackburn and Basil S. Yanakakis as my attorneys...." The fee agreement dated March 18 was signed by Yanakakis, but not by Leesfield & Blackburn. The agreement was silent as to the distribution of fees as between Yanakakis and the Leesfield firm. (Plaintiffs' Memorandum of Law in Support of its Motion for Partial Summary Judgment Exh. 5.)

Ultimately, Miliaresis settled directly with defendants and discharged Yanakakis and the Leesfield firm. (Yanakakis Deposition at 91–93.) Plaintiffs filed an action alleging that defendants intentionally induced Miliaresis, by fraud and coercion, to discharge the plaintiffs, thereby tortiously interfering with the plaintiffs' advantageous business relationship with Miliaresis. Following judgment for the plaintiffs, defendants Chandris, S.A., Chandris, Inc., and Transport Mutual Services, Inc., appeal.

## II. Contentions of the Parties

Defendants argue that the district court erred in denying their cross-motion for summary judgment because the agreements upon which plaintiffs bottom their claims are void as the unauthorized practice of law and the assistance thereof. Defendants note that Yanakakis was not, and is not, licensed to practice law in Florida. Nonetheless, as a resident of Florida, Yanakakis entered into a contingent fee agreement with Miliaresis in Florida. Therefore, Yanakakis engaged in the unauthorized practice of law in derogation of Section 454.23, Florida Statutes (1983). Moreover, defendants point out that Yanakakis is not a transitory attorney associated with a multistate firm. Thus, defendants argue that *The Florida Bar v. Savitt*, 363 So.2d 559 (Fla.1978), upon which the plaintiffs rely, is distinguishable. *Savitt*, defendants contend, merely enumerates rules for the practice of law in Florida by attorneys of multistate firms who are not licensed to practice in Florida.

Further, defendants argue this is not a case where an out-of-state attorney is retained by a client, in the state where the attorney is admitted, and where the attorney subsequently associates an attorney who is licensed to practice in Florida or petitions to appear *pro hac vice* before a court in Florida. To the contrary, defendants assert this case

---

4. Miliaresis contends that Yanakakis never explained that he could not practice in Florida as he was not licensed to practice law in Florida.

5. Miliaresis argues that Yanakakis never explained that a Florida firm needed to be retained. To the contrary, Miliaresis testified that he believed that Yanakakis could, and would, personally handle his claim.

involves an out-of-state attorney who moves to Florida, chooses not to seek admission to the Florida Bar, and then enters into an "authority to represent" a client in Florida. Defendants suggest that according to plaintiffs' logic, out-of-state attorneys can flock to Miami and sign up clients with impunity.

In addition, defendants contend that the Leesfield & Blackburn agreement is void and an action for tortious interference will therefore not lie. The district court found that even if Yanakakis's agreements were void, the validity of the Leesfield & Blackburn agreement would not be affected.

Plaintiffs' arguments are equally prolix. Essentially, plaintiffs contend that in *Savitt* the Florida Supreme Court clearly delineates what activities an out-of-state attorney may engage in without running afoul of Florida's statutory prohibition against the unauthorized practice of law. Plaintiffs opine that Yanakakis's fee agreements do square with the rules enumerated in *Savitt;* therefore, the agreements are valid and an action for tortious interference will lie. Further, plaintiffs argue that even if Yanakakis's agreements are void, it would not affect the validity of the Leesfield & Blackburn agreement.

### III. Florida Law

In Florida, a contract is void and cannot be the source of rights if either the formation or the performance of the contract is criminal, tortious, or otherwise opposed to public policy. *Thomas v. Ratiner,* 462 So.2d 1157, 1159 (Fla. 3d DCA 1984); *see also Sunbeam Corp. v. Master of Miami,* 225 F.2d 191 (5th Cir. 1955).[6] Section 454.23, Florida Statutes (1983), proscribes the unauthorized practice of law. However, Florida law does not clearly establish what constitutes the unauthorized practice of law within the context of an out-of-state attorney who resides in Florida.

Plaintiffs argue that *Savitt* is controlling. We are unable to conclude that *Savitt* con-

trols. In *Savitt,* the Florida Supreme Court merely enumerated the activities that out-of-state attorneys employed in an interstate law firm could, and could not, engage in. Defendants, in turn, point to a line of cases in which *lay persons* were found to have engaged in the unauthorized practice of law. We find the defendants' proffered cases equally unpersuasive.[7]

Neither the district court, nor any of the parties, cites a Florida case that unequivocally establishes whether an out-of-state attorney, who resides in Florida but is not associated with a firm, may enter into retainer agreements in Florida.

However, assuming arguendo that Yanakakis's agreements were void as the unauthorized practice of law, was the Leesfield agreement void as a consequence thereof? Plaintiffs argue, and the district court found, that irrespective of the status of Yanakakis's agreements, the Leesfield agreement was valid and an action for tortious interference will therefore lie. Again, Florida law does not appear to provide a definitive answer as to whether a contingent fee agreement born of a void fee agreement is itself invalid. Accordingly, we certify the following two questions to the Florida Supreme Court.

### IV. Questions to be Certified

(1) WHETHER AN OUT-OF-STATE ATTORNEY, WHO RESIDES IN FLORIDA BUT IS NOT ASSOCIATED WITH A FLORIDA LAW FIRM, ENGAGES IN THE UNAUTHORIZED PRACTICE OF LAW WHERE THAT ATTORNEY ENTERS INTO A CONTINGENT FEE AGREEMENT IN FLORIDA, THEREBY RENDERING THAT FEE AGREEMENT VOID.

(2) WHETHER A FEE AGREEMENT OF A FLORIDA LAW FIRM BORN OF A FEE AGREEMENT THAT IS VOID AS

---

**6.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**7.** Defendants cite *The Florida Bar v. Tate,* 552 So.2d 1106 (Fla.1989). In *Tate,* an out-of-state

attorney was found to have engaged in the unauthorized practice of law. *Id.* However, in *Tate,* unlike the instant case, the attorney filed pleadings. Moreover, the *Tate* court did not address the validity of retainer agreements entered into by out-of-state attorneys in Florida.

THE UNAUTHORIZED PRACTICE OF LAW IS ITSELF VOID.

Our statement of the questions to be certified is not meant to limit the scope of inquiry by the Supreme Court of Florida.

> [T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case. This latitude extends to the Supreme Court's restatement of the issue or issues and the manner in which the answers are to be given, whether as a comprehensive whole or in subordinate or even contingent parts.

*Martinez v. Rodriguez,* 394 F.2d 156, 159 n. 6 (5th Cir.1968) (citations omitted).

The entire record in this case, together with copies of the briefs of the parties, is transmitted herewith.

QUESTIONS CERTIFIED.