668 So.2d 180 (1995)
CHANDRIS, S.A., etc., et al., Appellants,
v.
Basil YANAKAKIS, et al., Appellees.
No. 82934.
Supreme Court of Florida.
December 21, 1995.
Rehearing Denied February 16, 1996.
*181 David J. Horr of David J. Horr, P.A., Miami; Joseph T. Stearns, New York City; and Reginald M. Hayden, Jr. of Hayden & Milliken, Miami, for Appellants.
Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami; Tony Cunningham of Cunningham Law Group, P.A., Tampa; and Ira H. Leesfield of Leesfield & Blackburn, P.A., Miami, for Appellees.
HARDING, Justice.
This case is before the Court to review two questions of law certified by the United States Court of Appeals for the Eleventh Circuit in Yanakakis v. Chandris, S.A., 9 F.3d 1509 (11th Cir.1993). The questions presented are expressed as follows:
(1) WHETHER AN OUT-OF-STATE ATTORNEY, WHO RESIDES IN FLORIDA BUT IS NOT ASSOCIATED WITH A FLORIDA LAW FIRM, ENGAGES IN THE UNAUTHORIZED PRACTICE OF LAW WHERE THAT ATTORNEY ENTERS INTO A CONTINGENT FEE AGREEMENT IN FLORIDA, THEREBY RENDERING THAT FEE AGREEMENT VOID.
(2) WHETHER A FEE AGREEMENT OF A FLORIDA LAW FIRM BORN OF A FEE AGREEMENT THAT IS VOID AS THE UNAUTHORIZED PRACTICE OF LAW IS ITSELF VOID.
Id. at 1513-14. We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution. We answer both questions in the affirmative based upon our conclusion that in order to further the public interest we must regulate contingent fee agreements entered by attorneys in Florida for legal services to be performed in Florida. Specifically, we find that Florida contingent fee agreements entered by attorneys not subject to our professional regulations are unauthorized legal services and are void as against public policy. Florida contingent fee agreements entered into by attorneys subject to our regulations but which do not comply with the regulations are likewise void as against the public interest.
This case involves an action for damages alleging tortious interference with contracts for legal representation. Basil Yanakakis, a Massachusetts attorney and Florida resident who is not a member of The Florida Bar, *182 entered into a contingent fee agreement with an injured Greek seaman, Nikolas Miliaresis, in Miami, Florida. Miliaresis subsequently signed a second fee agreement in which Yanakakis and the Florida law firm of Leesfield & Blackburn, P.A. (Leesfield), were retained to prosecute the seaman's claim.
Miliaresis discharged Yanakakis and Leesfield after he settled directly with the operators of the ship and its insurer, Chandris, S.A., Chandris, Inc., and Transport Mutual Services, Inc. (Chandris). Yanakakis and Leesfield filed an action in federal district court alleging that Chandris used fraud and coercion to induce Miliaresis to discharge the attorneys. The jury returned a verdict in favor of Yanakakis and Leesfield, and awarded both compensatory and punitive damages. The district court entered judgment accordingly and denied Chandris's post-trial motions.
Chandris raised a number of issues on appeal to the Eleventh Circuit Court of Appeals, including an assertion that the district court erred in denying Chandris's cross-motion for summary judgment. The Eleventh Circuit concluded that the resolution of that issue could be dispositive of Chandris's appeal. The court further determined that the issue presented questions of first impression under Florida law and certified two questions to this Court, namely, whether an out-of-state attorney who resides in Florida but is not associated with a firm may enter into retainer agreements in Florida and whether a contingent fee agreement born of a void fee agreement is invalid.
We cite the opinion of the circuit court to more fully explain the relevant facts and circumstances in this case:
On October 3, 1984, Nikolas Miliaresis (hereinafter "Miliaresis"), a Greek seaman, was injured while the ship on which he worked was docking in Cozumel, Mexico. Miliaresis was airlifted to a hospital in Miami, Florida, where his leg was amputated.
Basil Yanakakis, at the request of a Greek Orthodox priest, visited Miliaresis, who spoke little English, at Jackson Memorial Hospital in Miami, Florida. Yanakakis was born in Greece. He was admitted to the Massachusetts Bar in 1964. Between 1964 and 1979, Yanakakis practiced law and taught at Suffolk Law School. He specialized in international and maritime law. In addition, Yanakakis was admitted to practice before the United States District Court of Massachusetts, the First Circuit Court of Appeals, the United States Court of Customs and Patent Appeals, the United States Tax Court, and the United States Supreme Court. In 1980, however, Yanakakis discontinued the practice of law and moved to Florida where he established his domicile. Upon moving to Florida, he became involved in real estate and managed personal investments. Yanakakis is not, and has never been, a member of the Florida Bar.
Yanakakis met with Miliaresis in the hospital on several occasions. During those visits Miliaresis learned that Yanakakis was a member of the Massachusetts Bar. Yanakakis told Miliaresis that he was not a member of the Florida Bar. On October 16, 1984, Miliaresis signed a retainer agreement written in English and titled "Authority to Represent" which stated that Miliaresis retained "BASIL S. YANAKAKIS, ATTORNEY from the Commonwealth of Massachusetts as my attorney to represent me...." The retainer agreement did not state that Yanakakis was not licensed to practice in Florida. Yanakakis told Miliaresis he would represent him and find a local attorney for him. Additionally, at some point, Yanakakis gave Miliaresis's brother a label that stated: "Basil S. Yanakakis, Attorney at law, Suite 801 New World Tower, 100 North Biscayne Boulevard, Miami, Florida 33132."
In November of 1984, Yanakakis contacted Ira H. Leesfield to discuss retaining Leesfield & Blackburn, P.A., for prosecution of Miliaresis's claim. Pursuant to arrangements made between Yanakakis and Leesfield, an attorney from that firm met with Miliaresis. At that time, Miliaresis orally retained the Leesfield firm to assist Yanakakis. Soon thereafter, the firm initiated an investigation of Miliaresis's claim. On March 18, 1985, Miliaresis executed an *183 agreement retaining "the Law Offices of Leesfield and Blackburn and Basil S. Yanakakis as my attorneys...." The fee agreement dated March 18 was signed by Yanakakis, but not by Leesfield & Blackburn. The agreement was silent as to the distribution of fees as between Yanakakis and the Leesfield firm.
Ultimately, Miliaresis settled directly with defendants and discharged Yanakakis and the Leesfield firm. Plaintiffs filed an action alleging that defendants intentionally induced Miliaresis, by fraud and coercion, to discharge the plaintiffs, thereby tortiously interfering with the plaintiffs' advantageous business relationship with Miliaresis. Following judgment for the plaintiffs, defendants Chandris, S.A., Chandris, Inc., and Transport Mutual Services, Inc., appeal.
9 F.3d at 1511-12 (footnotes and record citations omitted).
Chandris argues that Yanakakis procured the original agreement with Miliaresis through the unauthorized practice of law in violation of section 454.23, Florida Statutes (1983),[1] and thus the agreement is void ab initio. Yanakakis contends that because Miliaresis's claim was based on the Jones Act[2] Florida may not enjoin an attorney from advising about this federal legislation. He essentially argues a federal law exception to the unauthorized practice of law, and cites Sperry v. Florida ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), as authority.
In Sperry, the United States Supreme Court determined that Florida could not enjoin a nonlawyer registered to practice before the United States Patent Office from preparing and prosecuting patent applications in Florida, even though those activities constitute the practice of law. The Court's ruling was based upon the federal statute and patent office regulations that specifically authorize practice before the patent office by nonlawyer agents. 373 U.S. at 384, 83 S.Ct. at 1325. The Court recognized that "Florida has a substantial interest in regulating the practice of law within the State and that, in the absence of federal legislation, it could validly prohibit nonlawyers from engaging in this circumscribed form of patent practice." Id. at 383, 83 S.Ct. at 1325. The Court further noted that because "patent practitioners are authorized to practice only before the Patent Office, the State maintains control over the practice of law within its borders except to the limited extent necessary for the accomplishment of the federal objectives." Id. at 402, 83 S.Ct. at 1335.
Unlike the federal patent law at issue in Sperry, the Jones Act does not authorize practice by nonlawyers and gives state and federal courts concurrent jurisdiction over such claims. See Engel v. Davenport, 271 U.S. 33, 37, 46 S.Ct. 410, 412, 70 L.Ed. 813 (1926). In Norfolk & Western Railway Co. v. Beatty, 400 F.Supp. 234 (S.D.Ill.), aff'd, 423 U.S. 1009, 96 S.Ct. 439, 46 L.Ed.2d 381 (1975), a federal district court upheld the constitutionality of an Illinois court rule limiting the participation of out-of-state attorneys in pending Federal Employers' Liability Act and Jones Act litigation. Even though the cases were of "federal origin," the district court refused to "create a limited federal or national bar and to impose it on the states." Id. at 237. The court concluded that to do so would be in total disregard of the state's great interest in controlling the practice of law in its own courts. Id. at 237 & n. 2. The United States Supreme Court has also stated that "[t]here is no right of federal origin that permits ... lawyers to appear in state courts without *184 meeting that State's bar admission requirements." Leis v. Flynt, 439 U.S. 438, 443, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1979). Thus, we find no merit to Yanakakis's argument that there is a general federal law exception to Florida's bar admission requirement.
Yanakakis also argues that this Court's decision in Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978), specifically authorizes his actions in this case. We do not agree. Savitt involved a New York law firm that opened an office in Miami and assigned a partner who was not a member of The Florida Bar to supervise the operation of that office. The Bar alleged that Savitt, in the course of his supervisory activities, engaged in conduct which constituted the unauthorized practice of law. The Bar sought an injunction to restrain such activities. After considering a stipulated settlement submitted by the parties, this Court enjoined the attorneys who were not members of The Florida Bar from engaging in professional activities in Florida because such professional activities would constitute the unauthorized practice of law. Id. at 560. We did approve as exceptions a number of activities that were necessary to the operation of a multi-state law firm. Id. at 560-61. The approved stipulation, however, made clear that those exceptions allowing attorneys who were not Florida Bar members to give legal advice to clients in Florida were limited by the requirements that the attorney be in Florida on a transitory basis and that the attorney make clear to the client that he or she is not a member of The Florida Bar. Id. at 561.
We conclude that by entering a contingent fee agreement with Miliaresis, Yanakakis engaged in a professional activity without the authority to do so and thus engaged in the unauthorized practice of law proscribed by Savitt. Entering a contingent fee agreement in Florida and thus agreeing to provide legal representation in Florida to a client pursuing a personal injury or tort claim involves engaging in a professional activity. Such professional activity falls within the boundaries of what we regulate as the authorized practice of law. In determining whether a particular act constitutes the practice of law, our primary goal is the protection of the public. Florida Bar v. Brumbaugh, 355 So.2d 1186, 1192 (Fla.1978). In 1977, this Court recognized that "it is in the best interest of the public to amend the Code of Professional Responsibility" by setting forth specific requirements for Florida contingent fee agreements. In re Florida Bar-Amendment to the Code of Professional Responsibility (Contingent Fees), 349 So.2d 630, 632 (Fla.1977) (hereinafter Contingent Fees).
Florida has a unified bar, and all persons engaged in the practice of law here must be members of that bar. Petition of Florida State Bar Ass'n, 40 So.2d 902 (Fla. 1949). More than thirty years ago, we enunciated why we prohibit those who are not members of The Florida Bar from engaging in professional activities in Florida which are within the boundaries of the practice of law. This Court noted in State ex rel. Florida Bar v. Sperry, 140 So.2d 587, 595 (Fla.1962), rev'd on other grounds, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), that:
The reason for prohibiting the practice of law by those who have not been examined and found qualified to practice is frequently misunderstood. It is not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control in the matter of infractions of the code of conduct which, in the public interest, lawyers are bound to observe.
Because Yanakakis's fee agreement was a professional activity and it was not performed by a member of The Florida Bar, it had to fit within one of the exceptions enumerated in Savitt in order to amount to the authorized practice of law. However, Yanakakis's professional activity did not fall within one of those exceptions. Yanakakis offered more than legal advice about federal law; he entered into an "Authority to Represent" Miliaresis in his claim for damages against Chandris. In fact, Miliaresis testified that he believed that Yanakakis could and would personally handle his claim. In addition, Yanakakis was not in Florida on a *185 transitory basis. He had resided in Florida since 1980 but apparently chose not to seek admission to The Florida Bar. Finally, although the agreement provides that Yanakakis is an attorney from Massachusetts, it contains no explanation that he is not a member of The Florida Bar as contemplated by Savitt.
Yanakakis contends that even if he was not authorized to enter into a contingent fee agreement with Miliaresis, the agreement is only voidable and can still be the basis for a tortious interference action against Chandris. In support of his position, Yanakakis cites a number of cases where the district courts have found contingent fee agreements to be enforceable despite some violation of the Rules Regulating The Florida Bar that govern such agreements. See, e.g., Harvard Farms, Inc. v. National Casualty Co., 617 So.2d 400 (Fla. 3d DCA 1993) (fact that oral contingent fee agreement violated R.Reg.Fla. Bar 4-1.5(f)(1), (2) did not make it void under Florida law); accord Fernandes v. Barrs, 641 So.2d 1371 (Fla. 1st DCA 1994). We do not agree with, and thus expressly disapprove, this line of cases to the extent they may be read to hold that a contingent fee contract which does not comply with the Code of Professional Responsibility or the Rules Regulating The Florida Bar is enforceable by an attorney who claims fees based upon a noncomplying agreement.
As noted in Contingent Fees, we found it to be in the best interest of the public to amend the Code of Professional Responsibility[3] with respect to the division and disclosure of contingent fees in personal injury and other tort cases. 349 So.2d at 632. We specifically held:
The resulting increase in accountability to the client in contingent fee cases and availability of information concerning fee arrangements will place the client in a better position to assess the reasonableness of the fee in the first instance and at the same time will facilitate the discovery and discipline of those who abuse the contingent fee system.
Id. Accordingly, we amended Disciplinary Rule 2-106 of the Code of Professional Responsibility to include subsection (E), which specifically commands that a contingent fee agreement meet the following requirements: (1) the agreement must be reduced to a written contract; (2) each participating attorney or law firm shall sign the contract or agree in writing to be bound by the terms of the contract with the client; (3) each attorney shall agree to assume the same legal responsibility to the client for the performance of the services in question; and (4) the client shall be furnished with a copy of the signed contract. Id. at 636. Contracts that do not comply with this regulation offend public policy and are antagonistic to the public interest. A contract that contravenes an established interest of society can be found to be void as against public policy. American Casualty Co. v. Coastal Caisson Drill Co., 542 So.2d 957, 958 (Fla.1989); City of Miami v. Benson, 63 So.2d 916 (Fla.1953).
If a contingent fee agreement is to comply with the requirements specified by the Rules Regulating The Florida Bar, then the attorney or attorneys involved in the agreement must first be subject to those regulations. If we were to hold a Florida contingent fee contract entered into by a person or attorney who is not a member of The Florida Bar to be voidable rather than void, we would be recognizing the validity of a contract entered into by an attorney not subject to our regulations. This would afford viability to an unregulated contract of the very kind that we have determined to be in the public interest to regulate. Contingent Fees, 349 So.2d at 632. Additionally, recognizing such an agreement would be directly contrary to the reasons we have expressed for prohibiting the unauthorized practice of law. Sperry, 140 So.2d at 595.
Likewise, we hold that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule *186 governing contingent fees in order to be enforceable. We have determined that the requirements for contingent fee contracts are necessary to protect the public interest. Thus, a contract that fails to adhere to these requirements is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule.[4] Moreover, enforcing contingent fee agreements that are not in compliance with the rule would be unfair as well as constitute a competitive disadvantage to members of The Florida Bar who do comply with the rule.
We do state that a non-Florida attorney can join with a Florida attorney in a joint representation of a client in Florida on the basis of a contingent fee agreement that complies with the rules. Such a Florida contingent fee agreement for joint legal services in personal injury or tort cases has to be in writing, must be executed by the client(s), a Florida attorney, and the non-Florida attorney, and must state the division of fees to be applied. R. Regulating Fla. Bar 4-1.5(f)(2). In following this procedure, the agreement is subject to our regulation as well as in compliance with our regulation.
Having answered the certified questions, we remand the case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW and WELLS, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, J., concurs.
ANSTEAD, Justice, dissenting.
I would answer both certified questions in the negative because I do not believe the actions involved in this case are so egregious as to be held per se illegal and violative of Florida public policy. For example, in United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla.1979), we approved a cause of action for tortious interference with a contract, notwithstanding the fact that the contract was unenforceable under the provisions of section 537.05(2), Florida Statutes (1977), requiring brokerage contracts to be in writing. The only difference between these two cases is that one involves lawyers and one involves brokers.
On the issue of void versus voidable, I would opt for a case-specific analysis as adopted by many state courts. For example, in a similar situation the New Jersey Supreme Court refused to hold that New York lawyers had engaged in the unauthorized practice of law in New Jersey:
As both Appell [v. Reiner, 43 N.J. 313, 204 A.2d 146 (1964)] and Spivak [v. Sachs, 16 N.Y.2d 163, 263 N.Y.S.2d 953, 211 N.E.2d 329 (1965)] illustrate, questions of unlawful practice will turn on the particular facts presented.... Here the facts clearly negate unlawful practice.... There is nothing in the record to indicate that the New York law firm is engaged in any widespread practice of participating in the handling of New Jersey estates or that this was not a situation in which admission pro hac vice might have been sought and granted. The firm was in good faith retained by the executors because of its long-standing representation of the Waring family and its familiarity with the family affairs, and, on its recommendation, the executors retained New Jersey counsel to handle the New Jersey aspects of the estate....
. . . .
... As indicated earlier in this opinion, the subject must be viewed practically and realistically and must be dealt with in commonsensible fashion and with due regard for the customary freedom of choice in the selection of counsel; thus viewed and dealt with, there appears to be little room for doubt that, on the particular showing in the record before us, the out-of-state firm properly participated in the handling of the estate and so restricted its activities as to *187 avoid any fair charge that it was wrongfully practicing law in New Jersey.
In re Estate of Waring, 47 N.J. 367, 221 A.2d 193, 198-99 (1966) (citations omitted).[5]
It is undisputed here that Yanakakis was sought out to assist the seriously injured seaman, and, more importantly, he was open and aboveboard at all times in informing the injured seaman that he was not admitted to practice law in Florida and was, accordingly, limited in his ability to aid the seaman in Florida. It is also undisputed that Yanakakis was, at all material times, admitted to practice in the federal courts and in Massachusetts, and he was especially well qualified in the practice and teaching of maritime law.
The majority opinion turns on the fact that Yanakakis has become a resident of Florida, and the coincidence that he was sought out by a priest to assist the injured seaman when *188 the seaman was brought to Florida for medical treatment. Presumably, under the majority analysis, a Massachusetts lawyer, like Yanakakis, could have come to Florida and properly done the same things that Yanakakis did. In fact, the majority opinion states:
We do state that a non-Florida attorney can join with a Florida attorney in a joint representation of a client in Florida on the basis of a contingent fee agreement that complies with the rules. Such a Florida contingent fee agreement for joint legal services in personal injury or tort cases has to be in writing, must be executed by the client(s), a Florida attorney, and the non-Florida attorney, and must state the division of fees to be applied. R. Regulating Fla. Bar 4-1.5(f)(2). In following this procedure, the agreement is subject to our regulation as well as in compliance with our regulation.
Majority op. at 186. Also, Yanakakis could have properly done exactly what he did if he did it in Mexico where the injury occurred, or anywhere else outside the State of Florida. However, a natural extension of our decision would bar law teachers and others admitted to practice law in other states from rendering legal services or consultation of any kind in Florida. That is what we have said about Yanakakis: no matter how clear and open he was about the limitations of his own activities and his inability to practice law in Florida, he could not give legal advice or render legal services of any kind in Florida. Consequently, I do not find this a sound basis for analysis, especially considering the decisions in Sperry v. Florida ex rel. Florida Bar, 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), and Florida Bar v. Savitt, 363 So.2d 559 (Fla.1978).[6]
Finally, I have substantial concerns about the broad sweep of the blanket rule adopted by the majority in making the Rules of Professional Conduct rules of law. This is contrary not only to the court decisions cited in the majority opinion but also to the rules themselves. In Lee v. Florida Department of Insurance & Treasurer, 586 So.2d 1185 (Fla. 1st DCA 1991), the First District reviewed a decision holding that an agreement was void because it violated the Rules of Professional Conduct. In overturning the decision, the court declared:
We hold that the hearing officer erred in ruling that the provision in paragraph 8 of the settlement agreement is prohibited and thus made void by rule 4-5.6 of the Florida Bar's Rules of Professional Conduct.
We first would note that the application of rule 4-5.6 to invalidate or render void a provision in a private contract between two parties is beyond the scope and purpose of the Rules and constitutes error. As the preamble to the Rules states, they "simply provide a framework for the ethical practice of law." The preamble further explains:
Failure to comply with an obligation or prohibition imposed by a rule is a basis for invoking the disciplinary process....
Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons.... Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of *189 lawyers or the extra-disciplinary consequences of violating such duty.
To use rule 4-5.6 as the basis for invalidating a private contractual provision is manifestly beyond the stated scope of the Rules and their intended legal effect. Until paragraph 8 of the settlement agreement has been voided, canceled, or nullified by a court of competent jurisdiction, it must be treated as valid and binding on all parties legally affected by its terms.
Id. at 1188 (footnotes omitted). We are venturing into uncharted territory today based on a factual situation that simply does not appear to justify such a drastic pronouncement.
KOGAN, J., concurs.
NOTES
[1] Section 454.23, Florida Statutes (1983), provides:

Any person not licensed or otherwise authorized by the Supreme Court of Florida who shall practice law or assume or hold himself out to the public as qualified to practice in this state, or who willfully pretends to be, or willfully takes or uses any name, title, addition, or description implying that he is qualified, or recognized by law as qualified, to act as a lawyer in this state, and any person entitled to practice who shall violate any provisions of this chapter, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
[2] The Jones Act authorizes a seaman who suffers personal injury "in the course of his employment" to bring "an action for damages at law." 46 U.S.C.App. § 688(a) (1988).
[3] The Code of Professional Responsibility was replaced by the Rules Regulating the Florida Bar on January 1, 1987. Florida Bar re Rules Regulating The Fla. Bar, 494 So.2d 977 (Fla.1986). However, at the time that the agreements were signed in this case, the Code of Professional Responsibility governed attorney conduct.
[4] Even though a member of The Florida Bar cannot claim fees based upon a noncomplying agreement, the attorney would still be entitled to the reasonable value of his or her services on the basis of quantum meruit. Cf. Rosenberg v. Levin, 409 So.2d 1016 (Fla.1982) (holding that a lawyer discharged without cause by client after lawyer has performed substantial legal services under a valid contract of employment is entitled to the reasonable value of services on the basis of quantum meruit).
[5] In Dietrich Corp. v. King Resources Co., 596 F.2d 422 (10th Cir.1979), the court held that a professor of law at the University of Colorado, who was admitted to practice only in Illinois, could enter into a contingency fee contract in Colorado in association with a Colorado attorney, and he was not guilty of the unauthorized practice of law. The court relied heavily upon the American Bar Association's Formal Ethics Opinion 316, entitled "The Practice of Law Across State Lines":

In ABA Comm. on Professional Ethics Opinions No. 316 (1967), considering fee sharing arrangements between lawyers admitted in different states, it is stated expressly, "A lawyer admitted in one state for the purpose of the Canons of Ethics is a lawyer everywhere," and
Only lawyers may share in such a division of fees, but in such cases it is not necessary that both lawyers be admitted to practice in the same state, so long as the division was based on the division of services or responsibility. Canon 34 [now Canon 3]. A lawyer in State I is not, for the purposes of dividing fees with a lawyer in State II, a layman in State II.
Having been trained as a lawyer, indeed acknowledged to be an expert in the field of law and accounting and admitted to practice in Illinois, Professor Fiflis is a lawyer for purposes of the canons. If he were punished for breach of the Canons of Ethics, though he no longer lives in Illinois, no doubt it would have a devastating effect upon his career. If disbarred in Illinois he almost surely would not be allowed to practice his profession anywhere.
There is, of course, a distinction between the ethical framework within which lawyers function and the actual practice of law; each state itself determines what is the practice of law and who may practice law. Professor Fiflis apparently met the residence requirements but did not apply for admission to practice in Colorado until after rendering the services at issue here. Is what he did, providing services in the field of his legal expertise to or through established law firms, with no court appearances as an attorney, the practice of law in Colorado? The cases and ethics opinions we have seen have involved either court appearances as counsel for private clients or the rendering of legal services directly to a client who was not a lawyer or a law firm authorized to practice in the jurisdiction. Law firms have always hired unlicensed student law clerks, paralegals and persons who have completed their legal education but are awaiting admission to the bar, before or after taking a bar examination or fulfilling residency requirements. Virtually every lawyer has served in such a situation and performed services to or through other attorneys for some period prior to his or her own admission to practice in the state where such services were rendered. No one has treated this activity as the unauthorized practice of law, because the licensed attorneys alone remain responsible to the clients, there are no court appearances as attorney, and no holding out of the unlicensed person as an independent giver of legal advice. See Spanos v. Skouras Theatres Corp., 364 F.2d 161, 169 (2d Cir.), [cert. denied, 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966)]. ABA Op. 316, supra, treats this in the context of firm partnerships where not all lawyers are admitted to practice in the same state:
Of course, only the individuals permitted by the laws of their respective states to practice law there would be permitted to do the acts defined by the state as the practice of law in this state, but there are no ethical barriers to carrying on the practice by such a firm in each state so long as the particular person admitted in that state is the person who, on behalf of the firm, vouched for the work of all of the others and, with the client and in the courts, did the legal acts defined by that state as the practice of law.... The important requirement in this respect is simply that the local man must be admitted in the state and must have the ability to make, and be responsible for making decisions for the lawyer group. (Emphasis supplied).
In these cases an individual trained in the law acts as a filter between the unlicensed person (here Fiflis) and the lay client, adding and exercising independent professional judgment and, importantly, is an officer of the local court subject to its discipline.
Thus, we hold that Fiflis was entitled to be treated as a lawyer whose services in the instant case did not constitute the unauthorized practice of law.
596 F.2d at 426.
[6] See also Catoe v. Knox, 709 P.2d 964 (Colo.App. 1985) (attorney admitted in Florida did not engage in the unauthorized practice of law in Colorado by appearing before a Colorado zoning board with a local attorney to obtain a variance, and where no court appearance was made); Lindsey v. Ogden, 10 Mass.App.Ct. 142, 406 N.E.2d 701 (1980) (attorney admitted in New York did not engage in the unauthorized practice of law in Massachusetts by giving legal advice on estate plan to Massachusetts domiciliary and overseeing execution of will in Massachusetts); Petition of Waters, 84 Nev. 712, 447 P.2d 661 (1968) (attorney admitted in Texas and residing in Nevada did not engage in the unauthorized practice of law in either California or Nevada by sending letter from Nevada containing legal advice on California law to California prison inmate, where attorney had an agreement with licensed California attorney to act as local counsel if a court appearance became necessary).