[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14907
Non-Argument Calendar

_____

D.C. Docket No. 0:14-cv-60014-JIC

DAVID B. MURSTEN,

Plaintiff-Appellant,

versus

NICK A. CAPORELLA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 21, 2015)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

David Mursten appeals the summary judgment in favor of Nick Caporella

and against Mursten's complaint of breach of contract. Mursten, a lawyer, sought

to enforce an alleged contract to pay him $4 million in stock for services

performed in anticipation of the sale of National Beverage Corporation, of which Nick A. Caporella was the majority stockholder. The district court ruled that the alleged contract, which was not in writing or signed by Caporella, would violate Rule 4–1.8(a) Regulating the Florida Bar and would be unenforceable. After careful review, we affirm.

Mursten is a member of the Florida bar and provides "strategic planning" services for business organizations. Between 2006 and 2008, Mursten served as assistant counsel for Corporate Management Advisors, Inc., an entity wholly owned by Caporella. Mursten befriended Caporella, and Caporella purportedly fashioned the oral employment contract to "set aside wealth" for Mursten.

Mursten alleged that Caporella devised the contract before daybreak on September 6, 2010, while they were meeting in the lobby of The Ritz Carlton in Fort Lauderdale. Caporella asked Mursten to "be available on a 24 hour, seven[] day a week basis" to provide "advice and counsel" for the potential sale of National Beverage and to "perform any other task requested by Caporella, for [his] benefit . . . [and that of] his controlled entities." In exchange, Caporella allegedly offered to pay Mursten the lesser of $10 million or 2 percent of the sales price when the sale occurred, or if "no deal [was] ultimately reached," to transfer to Mursten $4 million of Caporella's shares in National Beverage and cash sufficient to pay any related income taxes. Mursten alleged that he accepted the offer, which

he referred to as the "Dr. Pepper Deal," and that Caporella later refused to execute a written employment agreement.

Mursten purportedly performed a myriad of services for Caporella. Between September 4 and 6, 2010, Mursten "worked intensely . . . [with Caporella] regarding the offer" to purchase National Beverage. Mursten also "work[ed] to get a competitor . . . to [submit a competing] bid"; "advis[ed] Caporella on strategic steps [to] increase the [sales] price"; "recommend[ed] an investment banking firm to . . . [use] in the negotiations"; "participat[ed] in due diligence . . . and other strategy meetings"; and "provid[ed] analysis, advice[,] and counsel on various strategic and tactical issues . . . ." Unrelated to the sale, Mursten "provid[ed] advice and assistance to Caporella in the potential purchase of various real estate properties in Florida, Mexico, New Hampshire and New York"; "serv[ed] as one of two trustees of . . . a grantor trust"; "review[ed] [a purchase] agreement between Caporella and his brother"; provided "advice and counsel on SEC disclosure issues," "maintenance options for . . . [Caporella's corporate] jet," "wealth management and estate issues," and "an investment opportunity in a medical startup venture"; and "purchas[ed] a new Mercedes for Caporella."

Caporella paid Murstein for at least some of his services. Mursten received a check of $28,200 for his work with Caporella between September 4 and 6, 2010, a "special real estate project," "Lawyer management and trust planning," and

3

"Recruiting, nurses and companion." Mursten also received a check of $49,548 for "estate planning" and "real estate" services, purchasing Caporella's "Vehicle," and a "New York Project."

By June 2011, negotiations terminated for the sale of National Beverage. In October 2011, Caporella said that he would complete the Dr. Pepper Deal by transferring $4 million in stock to Mursten within one year. In November 2011, Mursten received a check for $40,000 and thanked Caporella for the "excessive and generous check" as "measured against the specific, identifiable value created." Later that month, Mursten and Caporella had a disagreement and ended their relationship.

Mursten sued Caporella for breach of contract. Caporella disclaimed any knowledge of the Dr. Pepper Deal and moved for summary judgment. Caporella argued that the alleged oral agreement was unenforceable as "an impermissible, unwritten contingency fee agreement" and "an impermissible unwritten business transaction with a client" that would violate the Rules Regulating the Florida Bar. Mursten disavowed having a lawyer-client relationship with Caporella, but Caporella submitted a transcript of Mursten's deposition during which he authenticated a document that described his legal work for Caporella. The document stated that, in 2010, Mursten "Coordinated revision of Motion for Summary Judgment," "Reviewed draft motion," "Identified inconsistencies,"

4

Revised motion to incorporate [Caporella's] ideas," and "added other declarations to Motion." Those tasks involved a motion for summary judgment filed on September 3, 2010, three days before Mursten accepted the Dr. Pepper Deal.

The district court entered summary judgment in favor of Caporella. "[E]ven accepting Mursten's contention that he and Caporella agreed to the Dr. Pepper Deal," the district court ruled that "Mursten cannot enforce the oral agreement that would entitle him to a portion of Caporella's stock in [National Beverage]." The district court determined that the alleged contract, like the oral contingent fee agreement in *Chandris, S.A. v. Yanakakis*, 668 So. 2d 180 (Fla. 1995), would be void because it would "violate the requirements" of Rule 4–1.8(a) Regulating the Florida Bar and would be "unenforceable as a matter of public policy." Mursten would have violated Rule 4–1.8(a) by "enter[ing] into a business transaction with a client or knowingly acquir[ing] an ownership, possessory, security, or other pecuniary interest adverse to a client" without "fully disclos[ing] and transmit[ting] in writing . . . [a description of] the transaction and terms on which [he] acquires the interest"; giving "advi[ce] in writing of the desirability of seeking . . . the advice of independent legal counsel on the transaction"; and obtaining "informed consent, in a writing signed by the client, to the essential terms of the transaction." R. Regulating Fla. Bar 4–1.8(a)(1)–(3).

5

We review *de novo* a summary judgment and view the evidence in the light most favorable to the nonmovant. *Alliance Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 897 (11th Cir. 2000). Summary judgment is appropriate when the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

The district court correctly determined that the alleged contract would violate Rule 4–1.8(a) Regulating the Florida Bar. Even if we were to assume that Mursten and Caporella agreed to the alleged Dr. Pepper Deal, Mursten would have entered a business transaction to provide legal services in exchange for stock in Caporella's business, National Beverage, without recording the essential terms of or obtaining Caporella's assent to the transaction. *See* R. Regulating Fla. Bar 4–1.8 *cmt. on business transactions between client and lawyer* (requiring compliance with Rule 4–1.8(a) "when the lawyer accepts an interest in the client's business or other nonmonetary property as payment for all or part of a fee"); *The Fla. Bar v. Doherty*, 94 So. 3d 443 (Fla. 2012) (sanctioning a lawyer who provided legal and financial investment services for violating Rule 4–1.8(a)). Mursten argues that he was not Caporella's lawyer, but Mursten provided "advice and counsel" to Caporella; Mursten stated in an email sent to another lawyer in January 2011 that he was "an attorney for Nick A. Caporella"; and Mursten testified that he performed legal work for Caporella. Mursten's later declaration, in which he stated

6

that he "was not practicing as a lawyer for any clients" before the Dr. Pepper Deal and that he and Caporella "had no attorney-client relationship," is inconsistent with his earlier deposition testimony and failed to create a genuine issue of material fact to defeat summary judgment. *See Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

The district court did not err when it entered summary judgment against Mursten's complaint of breach of contract. The disclosure and recording requirements in Rule 4–1.8(a) serve the public interest by thwarting "overreaching when [a] lawyer participates in a business, property, or financial transaction with a client," R. Regulating Fla. Bar 4–1.8 *cmt. on business transactions between client and lawyer*. Overreaching is particularly of concern when a lawyer seeks to enforce an agreement to acquire stock worth millions of dollars in a lucrative business of a client who is also a personal friend. And the Supreme Court of Florida has held that a fee contract between a lawyer and a client that "fails to adhere to the[] requirements [of the Rules Regulating the Florida Bar] is against public policy and is not enforceable by the member of The Florida Bar who has violated the rule." *Chandris*, 668 So. 2d at 186; *see also Foodtown, Inc. of Jacksonville v. Argonaut Ins. Co.*, 102 F.3d 483, 485 (11th Cir. 1996) (refusing to recognize an oral fee agreement that violated Rule 4–1.5(f)). Because the alleged Dr. Pepper Deal would have violated the express requirements of and purposes for

7

Rule 4–1.8(a), the district court did not err in determining that the alleged contract between Mursten and Caporella would be void.

We **AFFIRM** the summary judgment in favor of Caporella.