[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12104
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-00330-MCR-CJK

HENRY M. WELLS, III,
as the Independent Executor of the
Succession of Arden J. Lea Deceased,

Plaintiff-Appellant,

versus

POWELL POWELL & POWELL PA,

Defendant-Cross
Claimant-Appellee,

DIXIE DAN POWELL,

Defendant-Cross
Defendant-Appellee.

D.C. Docket No. 3:14-cv-00334-MCR-EMT

POWELL POWELL & POWELL PA,

Plaintiff-Appellee,

versus

HENRY M. WELLS, III,
as personal representative of the estate
of Arden J. Lea Deceased,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(October 2, 2017)

Before MARTIN, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Henry M. Wells, III, executor of the estate of Arden J. Lea, filed a diversity action for damages against Powell, Powell & Powell, P.A. (the "Firm") and Dixie Dan Powell ("Powell," collectively, "defendants"). Wells alleges that defendants are in breach of their contractual obligation to share with Lea's estate certain attorney's fees recovered in two cases. Defendants contend that the estate is not entitled to any attorney's fees because Lea died before the fees were recovered in

2

both cases.  The district court granted summary judgment in favor of the

defendants and dismissed Wells's breach of contract claims with prejudice.  After

careful consideration, we affirm.

I.

In 2009, Powell—on behalf of the Firm—executed written agreements with

Lea to act as co-counsel in two cases:  a wrongful death action ("Doe Case") and a

personal injury action ("Roe Case").[1]  The Doe agreement was signed by Powell,

Lea, and the Doe clients in May 2009 and approved in June 2010.  The Roe

agreement was signed by Powell, Lea, and the Roe clients in October 2009 and

approved in June 2010.  Both agreements were submitted to and approved by the

Circuit Court for Okaloosa County as attorney's fees contracts.  Both agreements

provide that the Firm and Lea would each collect one-half of any attorney's fees

earned after a recovery; that the Firm and Lea would share litigation expenses

equally; and that the agreements themselves are to be interpreted under Florida

law.[2]  Both agreements also include the following provision:  "The terms of this

Agreement may be changed only by a separate written agreement signed and dated

by Client[s] and Lawyers."

Wells brought this suit against the defendants in the U. S. District Court for

---

[1] We have replaced the clients' names with "Doe" and "Roe" to protect their privacy.

[2] The agreements both state that "Dixie D. Powell, Esq. of Powell, Powell, & Powell, P.A." would receive fifty percent of the attorney's fees and share expenses with Lea. None of the parties dispute that Powell signed on behalf of the Firm, and that the Firm was contracted to split fees and expenses with Lea. This opinion therefore accepts these as facts.

the Northern District of Florida, alleging that the Firm breached its obligations under the Doe and Roe contracts by failing to pay Lea's share of the attorney's fees. In response, the Firm filed an action in state court seeking a declaratory judgment as to its liability under the contingency fee agreements. Wells removed that action to district court. The district court consolidated the removed action with the pending Wells action, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. Wells and the defendants then filed cross-motions for summary judgment. The district court granted summary judgment to the defendants and against Wells, and dismissed the action with prejudice.

All parties accept the following facts. At all times material to this case, Powell was one of three shareholders in the Firm. Sometime in 2011, Lea was diagnosed with terminal pancreatic cancer and informed Powell of his illness. On October 17, 2011 Powell wrote Lea two letters, one for the Doe Case and the other for Roe Case. The Roe letter read:

> Dear Arden:
>
> This will confirm our attorney fee agreement on the [Roe Case] where you and I will share equally (50% each) in any and all attorney fees recovered. Our fee agreement has been court approved and under seal. Your portion of any fees recovered will be made payable to you or your estate.
>
> As always, I will honor our agreement.
>
> With kind personal regards, I remain,

Very truly yours,

/s Dixie D. Powell
**DIXIE D. POWELL**

The Doe letter was almost identical, but included an additional sentence saying that if Powell engaged new trial counsel in the Doe Case, he would "negotiate the best possible fee arrangement" and that the Firm and Lea would share equally in any fees not apportioned to new counsel. Both letters were signed by Powell only. The record presents no evidence that letters were submitted for court approval as new agreements or modifications of the prior attorney's fee agreements in the Roe Case and the Doe Case. On November 3, 2011, Lea died.

After Lea died, the Firm continued to represent Doe and Roe, and executed attorney's fee agreements with new co-counsel Fred "Catfish" Abbott in both cases. These new agreements made no mention of Powell's letters of October 17, 2011. In July 2013, the Circuit Court of Okaloosa County, Florida entered an order approving the settlement and attorney's fees distribution in the Doe Case. Wells requested one-half of the Firm's attorney's fees from the Doe Case.

In the Roe case, Abbott and Powell settled with one defendant in September 2012 and went to trial against the other. The jury decided the case in Roe's favor, and then the parties settled. Wells says he was not aware of the Roe settlement until the Firm told him about it during the course of this consolidated case.

On March 31, 2016, the district court granted the defendants' motions for

5

summary judgment, denied Wells's motion for summary judgment, and dismissed the case with prejudice. Applying Florida law, the court found the defendants had not breached the Doe and Roe contracts, which are silent on the issue of fees in the event of the death of an attorney. Neither did the court find any legal authority allowing the estate of a deceased attorney to recover from surviving co-counsel on a breach of contract claim. The court found that Powell's October 17 letters do not provide a basis for Wells's recovery because they are "are ineffectual modifications to the [c]ontracts" and are not enforceable as stand-alone fee-sharing contracts. Wells responded with this appeal.

## II.

We review <u>de novo</u> the district court's rulings on motions for summary judgment, applying the same standards as the district court. <u>Rioux v. City of Atlanta</u>, 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is appropriate when the evidence shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). In making this assessment, we "view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." <u>Carter v. City of Melbourne</u>, 731 F.3d 1161, 1166 (11th Cir. 2013) (per curiam) (quotation omitted).

6

Because this is a diversity case involving issues of Florida contract law, we apply Florida law.  See Tech. Coating Applicators, Inc. v. U.S. Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998).  "When we address issues of state law . . . we are bound by the decisions of the state supreme court."  World Harvest Church, Inc. v. Guideone Mut. Ins. Co., 586 F.3d 950, 957 (11th Cir. 2009).

### III.

We consider first whether, as Wells alleges, the Doe and Roe contracts entitle Lea to fifty percent of the fees earned in each of those cases, even though he died before the contingencies occurred.  It is a longstanding presumption of Florida contract law that a contract between an attorney and client for legal services "dissolve[s]" upon the death of either party.  Frissell v. Nichols, 114 So. 431, 434 (Fla. 1927); see also Gunderson v. School Dist., 937 So. 2d 777, 779 (Fla. 1st DCA 2006) ("[C]ontracts for personal services contain an implied condition that such contracts dissolve at the time of the contractor's death.").  Lea's contracts with Doe and Roe therefore terminated when he died on November 3, 2011.  At that moment, he was no longer bound to perform the services he promised in his agreements with Doe and Roe.  In turn, he was also no longer entitled to the

7

benefits of the contract—here half of the attorney's fees—for performing those services.[3]

Second, defendants allege, and Wells does not deny, that Lea voluntarily withdrew from representing Doe and Roe before his death and before the contingencies occurred. In Faro v. Romani, 641 So. 2d 69 (Fla. 1994), the Florida Supreme Court held that an attorney who voluntarily withdraws from representation under a contingency fee agreement before the contingency occurs "forfeits all rights to compensation." Id. at 71. The Faro court noted possible exceptions to this rule only where "the client's conduct makes the attorney's continued performance of the contract either legally impossible or would cause the attorney to violate an ethical rule of the Rules Regulating the Florida Bar." Id. Wells does not allege that client conduct required Lea's withdrawal. Instead, Wells argues that Florida law only limits recovery of fees directly from clients after attorney withdrawal. He says the rule is different for fee-sharing with other lawyers. Wells points to no legal authority that supports this distinction, however, and Faro does not distinguish between attorneys who seek fees directly from clients and those who seek to share fees with other attorneys. See id.

Wells also claims that Powell's October 17 letters modified the prior fee arrangements. Yet the original contracts provided for modification only by a

---

[3]Wells does not seek quantum meruit recovery for the services rendered by Lea before his withdrawal.

separate agreement signed by the clients and lawyers.  Powell's letters were not signed by Lea or the clients as the contracts required.  As a result, Powell's letters do not satisfy the express conditions for modifying the contingent fee agreements under the very terms of those agreements.

Nor are the letters separate enforceable agreements under Florida law, as Wells argues.  In Chandris, S.A. v. Yanakakis, 668 So. 2d 180 (Fla.1995), the Florida Supreme Court held that a contingent fee agreement that violates the Rules Regulating the Florida Bar is "void as against public policy" and unenforceable in Florida courts.  Id. at 181, 186.  The letters do not comply with Rule 4-1.5(g) of the Rules Regulating the Florida Bar, which allows a division of attorney's fees between lawyers from different firms only if the fee division is based on the proportion of services each lawyer performs or if there is a written agreement with the client in which each lawyer assumes joint responsibility for the representation, agrees to be available for consultation, and discloses the basis for dividing the fee. Neither of Powell's letters satisfies these necessary conditions.  Therefore, they do not stand alone as fee-sharing agreements.

## IV.

Because Lea voluntarily withdrew from representing Doe and Roe before the contingencies occurred, he is not entitled to compensation under the original contracts in either the Roe or Doe case.  Beyond that, Powell's letters were not

legally sufficient to modify the contingency fee agreements or create new

contracts.  They provide no basis for recovery.  The district court's grant of

summary judgment is **AFFIRMED.**