888 So.2d 683 (2004)
Ronald J. COOPER and Virginia Cooper as Personal Representatives of the Estate of Dorothy L. Cooper, deceased, Appellants,
v.
FORD & SINCLAIR, P.A., Philip DeBerard, and Melanie Kelly, Appellees.
No. 4D03-3077.
District Court of Appeal of Florida, Fourth District.
November 17, 2004.
*684 Sam T. Steger of Steger & Steger, P.A., Stuart, for appellants.
T. Patrick Ford, Jr., of Ford & Dean, P.A., Miami, and Philip M. Burlington of Philip M. Burlington, P.A., West Palm Beach, for appellees.
POLEN, J.
This appeal arises from a final order awarding attorneys' fees and costs to Appellees, Ford & Sinclair, P.A. and Philip DeBerard, and personal representative's fees to Appellee, Melanie Kelly. We affirm the order of the trial court on all regards.
Dorothy Cooper died on November 29, 2001, in the waiting area of the Martin Memorial Hospital emergency room. The incident received extensive media coverage, which was how Melanie Kelly learned of her death. Dorothy was the widow of Kelly's grandfather's brother, Ned Cooper, so Kelly was Dorothy's great-niece by marriage. Ned had two stepchildren from a previous marriage, Ronald Cooper and Virginia Cooper, whom, trial testimony revealed, he later adopted. Kelly testified that she did not know if Ronald and Virginia were Ned's stepchildren or adopted children, but she told her attorneys they existed. Dorothy was also survived by Ned's niece Joan Braithwaite, who is the mother of Kelly and Kelly's brother Bart Greene.
Upon learning of the death, Kelly called her mother, who then called Ronald Cooper in New York to learn if there would be a funeral. Kelly learned that no funeral service was planned, although it was possible in the future. Kelly also called Steger's law office, believing Steger was Dorothy's attorney since Kelly knew that he had been her uncle's attorney. Kelly testified that Steger's secretary told her there was no will and Steger admitted at trial that he never returned Kelly's calls. She also learned at the courthouse that no will was filed.
Kelly testified that she knew that Ronald Cooper did not intend to pursue a claim against the hospital because Willie Gary's office told him there was no case. Kelly still wanted to look into a possible claim against the hospital, so she called Philip DeBerard's law office. DeBerard contacted Ford & Sinclair, who agreed that, although there was no viable medical malpractice claim, they would research other theories. On December 17, 2001, Sinclair met with Kelly and she executed a contingency fee contract, naming Ford & Sinclair and DeBerard as her attorneys. Kelly had not yet been named Personal Representative (hereinafter "P.R.") and she signed the contract without designating her capacity. However, Sinclair testified that his firm signed up Kelly solely to represent the estate:
At the time an estate had not been opened but I advised Melanie Kelly that this action was not for her individually, *685 this action was on behalf of the estate, that I had nothing to do with where the money went after it went into the estate, that that would be the Court's decision, and she understood that.
She in no way signed the contract with me as an individual. We agreed that she would get an estate opened and we would proceed on behalf of the estate....
Now this happens often in our personal injury-type business.... [i]f the person who signs our contract is appointed personal representative, that's good enough. We don't have to go back and get another signature as long as they understand when they sign it the first time that they're being represented as the personal representative of the estate.
Sinclair and Kelly testified she understood she was not bringing this action individually, but as P.R. on behalf of the estate.
Sinclair and DeBerard obtained the services of Timothy Sander to open the formal probate administration for Dorothy's estate. Sander obtained waivers of priority from Greene and Braithwaite, but did not obtain waivers of priority from the Coopers.
On February 11, 2002, Kelly filed a Petition for Administration, identifying the nature of the assets in the estate solely as "a cause of action for the alleged improper care and/or wrongful death of the Decedent." The Petition listed Braithwaite as the deceased's niece, Kelly as the deceased's great niece, and Greene as the deceased's great nephew. The parties dispute whether notice of Kelly's petition for administration was provided to Ron and Virginia. There is no indication on Kelly's Petition for Administration itself that it was served on Ronald or Virginia Cooper, but Kelly and her attorneys argue that the Coopers' subsequent sworn Petition for Revocation of Letters of Administration states that the Coopers had been served. However, the Coopers' Petition merely states that they had been served with a Notice of Administration indicating that Melanie Kelly had been appointed as P.R.
On February 11, 2002, Kelly also filed a Petition for Order Designating Depository for Cash Assets, describing the anticipated assets as proceeds resulting from the recovery of that cause of action, and a Petition to Waive Bond of Personal Representative, identifying the assets in the estate as the cause of action for the decedent's death.
Sinclair researched the possibility of a claim on behalf of the estate, prepared a demand letter and a proposed two count complaint, and sent it to the hospital. The proposed complaint identified the action as being brought by Melanie Kelly as "Personal Representative of the Estate of Dorothy Cooper." After a failed meeting on March 1, 2002, and a March 12, 2002 letter to Sinclair from the hospital contending there was no viable claim, Kelly's attorneys negotiated a settlement offer from the hospital of $100,000 on behalf of the estate on March 17, 2002. The trial court held in its final order that, "[a]t the time of the settlement, the contract between Ford & Sinclair and Philip DeBerard, and the Estate of Dorothy Cooper, was completed."
The hospital had not yet cut the $100,000 check to the estate when, the following week, on March 25, 2002, Ron and Virginia Cooper filed a Petition for Revocation of Letters of Administration together with a Declaration that Proceeding is Adversary and a Petition for Administration. The Coopers also produced a will at that time, which named them as P.R.s. In the Coopers' Petition for Revocation, they stated that they were initially uncertain if it was necessary to probate *686 the will since most of the decedent's assets would not be subject to probate administration. The Petition also states that the Coopers were contacted by Kelly in late January or early February to determine if there was a will. It does not explain why the Coopers did not respond to Kelly's inquiries or disclose the will at that time, except to state that "the petitioners thought that Melanie Kelly was a potential intestate heir of the decedent's husband who died on September 21, 1998 and was not a potential intestate heir or interested person in Dorothy L. Cooper's estate." The Petition sought to revoke the Letters of Administration issued to "Kelly [b]ased on the decedent's will" and they did not allege any defect in any papers Kelly filed. The Coopers' attorney testified that he did not dispute the amount of the negotiated settlement with the hospital because he thought the amount was "fair" to the estate.
On April 15, 2002, Kelly filed an Answer and affirmative defense, stating that she had acted in good faith to ascertain from the Coopers and their attorney whether the decedent died testate and, if so, who the beneficiaries of the will were. She also stated that she acted in good faith in proceeding with the administration of the estate and the hiring of her attorney to represent her in her capacity as personal representative of the estate. Kelly also filed a Motion for Approval of Settlement on April 17, 2002. On June 11, 2002, the Coopers filed a Motion for Summary Judgment on the revocation petition and on July 18, 2002, Kelly and her attorneys filed their initial Petition for Payment of Personal Representative's Fee and Attorneys Fees.
On July 23, 2002, a Stipulation as to Petition for Revocation of Letters of Administration was filed, in which Kelly agreed to have her Letters of Administration revoked and re-issued to the Coopers in accordance with the will. The parties also agreed that Kelly would not be released from any liability for her actions while acting as P.R., and that Kelly would not release any rights that she may have to seek fees for her services as P.R. The trial court entered an order approving the stipulation and the will was then admitted to probate.
On June 12, 2003, an evidentiary hearing was held regarding Kelly's request for payment of fees and costs to her attorneys and herself. On July 8, 2003, the trial court signed an order approving the petition for payment of attorney's fees of $33,333 and costs of $2,030.67 to Ford & Sinclair, and Philip DeBerard. The trial court found that Kelly acted in the best interest of the estate during her tenure as P.R. and awarded her $2,000, which is 3% of the assets that Kelly was responsible for bringing into the estate. The Coopers appeal the trial court's July 8, 2003, order awarding the attorneys' fees and P.R. fees.
The Coopers first argue that the trial court abused its discretion by awarding attorney's fees and P.R. fees where such fees are based on the appointment of a P.R. who, the Coopers claim, knew or should have known that she was not entitled to preference of appointment and without formal notice to all persons who were entitled to such preference. The standard of review for a trial court order awarding such fees is abuse of discretion. Black v. Bedford At Lake Catherine Homeowners Ass'n., 801 So.2d 252, 253 (Fla. 4th DCA 2001); In re Melcher's Estate, 319 So.2d 192 (Fla. 4th DCA 1975).
In this case, Kelly and her attorneys reasonably believed that there was no will and the Coopers admit that Kelly was entitled to pursue her potential appointment as P.R. of the decedent's estate on an intestate basis, provided that she follow *687 the applicable statutes and probate rules. Section 733.301(b), Florida Statutes, provides the preference for appointment of a P.R. for intestate estates, stating that, if there is no surviving spouse, "[t]he person selected by a majority in interest of the heirs" is to be appointed personal representative. Section 732.103, Florida Statutes, provides the method of descent for intestate estates where there is no surviving spouse and section 732.103(5) states that where the deceased has no kindred, the estate shall be distributed to the kindred of the decedent's last deceased spouse as if she had been survived by him and then died intestate. In this case, all of the potential heirs were descendents of the decedent's spouse, Ned Cooper, including the Coopers as his adopted children, Kelly and Greene as his great-niece and great-nephew, and Braithwaite as his niece. Under section 732.103(5) and (1), the entire estate would descend to Ned Cooper's lineal descendents, Ronald Cooper and Virginia Cooper, whereas Kelly, Greene, and Braithwaite would not be entitled to share in the estate. As a result, only Ronald and Virginia Cooper would be entitled to select the person to be appointed as personal representative of the estate under section 733.301.
However, the above analysis indicating that Kelly and her attorneys should have been aware that she did not have standing to be appointed P.R. is based upon the assumption that Kelly and her attorneys knew that Ronald and Virginia Cooper had been legally adopted by Ned Cooper. Yet, Kelly's testimony at the hearing indicates that she did not know whether they were adopted: "I wasn't exactly sure if they were adopted or just stepchildren of Ned, but I knew they existed and I did tell [the attorneys] of Ron and Virginia." Kelly had never met Virginia Cooper. The first record evidence of the adoption was presented at the June 12, 2003, hearing on fees and costs, when Virginia Cooper testified that she was legally adopted by Ned Cooper.
The Coopers argue that Kelly would never have been appointed P.R. but for the errors and misrepresentations to the court as to her relationship to the decedent. The Coopers are apparently referencing a December 17, 2001 Affidavit of Relationship which refers to Kelly as the "niece of Dorothy Cooper" and a Probate Information form which lists Kelly as niece. However, the Probate Information form contains handwritten notes correcting "niece" to "greatniece." Moreover, there is no indication that either document was filed with the trial court, as they appear to have been used only internally between Kelly's attorneys. Kelly's February 11, 2002 Petition for Administration, which the trial court did rely upon in issuing the Order Appointing Person Representative to Kelly the following day, refers to Kelly as "the great niece of the Decedent." It is therefore unlikely that the trial court relied on any document incorrectly calling Kelly the decedent's niece.
The Coopers also argue that Kelly and her attorneys violated rule 5.201 of the Florida Rules of Probate and Guardianship Procedure, which states:
Except as may otherwise be required by these rules or the Florida Probate Code, no notice need be given of the petition for administration or the issuance of letters when it appears that the petitioner is entitled to preference of appointment. Before letters shall be issued to any person who is not entitled to preference, formal notice shall be served on all known persons qualified to act as personal representative and entitled to preference equal to or greater than the applicant, unless those entitled to preference waive it in writing.
*688 The Coopers allege that they were not given notice before the letters of administration were issued to Kelly. The Coopers claim that they were only notified after the letters were issued and after a potential settlement had been negotiated with the hospital by Kelly and her attorneys.
There is case law indicating that failure to comply with certain procedural requirements can result in the Letters of Administration being void ab initio. See In re Bush's Estate, 80 So.2d 673 (Fla.1955) (holding that, where creditor's petition stated that brother was next of kin, and brother had not waived his right to appointment as administrator at that time, failure to issue citation to brother before granting letters to administrator was fatal omission, and appointment was void); accord In re Baker's Estate, 339 So.2d 240 (Fla. 3rd DCA 1976). However, the holdings in In re Williamson's Estate, 95 So.2d 244, 246 (Fla.1957) and Estate of Retzel v. CSX Transp., Inc., 586 So.2d 1247 (Fla. 1st DCA 1991) render Kelly's letters of administration voidable rather than void ab initio. In Williamson's Estate, decided after Bush's Estate, the first administrator's letters had been revoked upon the later discovery of a will. Id. at 245. The Florida Supreme Court held:
Although originally the rule may have been otherwise, it is now generally conceded that the discovery of a will and the issuance of letters testamentary after the appointment of an administrator for an estate does not render the grant of letters of administration void. It is only voidable. This leads to the result that all acts and things done by the administrator pursuant to the letters of administration are not open to collateral attack and are binding on the parties interested in the estate, including the subsequently named executor or administrator cum testamento annexo.
Id. at 246. In this case, as in Williamson's Estate, Kelly's letters of administration were merely voidable rather than void ab initio, since the Coopers' petition to revoke Kelly's letters of administration was not based on any defect in the formal notice requirement, but simply on the later production of a will, which had not previously been disclosed.
The trial court's decision to render the original letters of administration void is permissive, not mandatory, depending on whether the estate has benefited. In Estate of Retzel, the decedent died intestate in a train accident, survived by a mother, father, and stepmother. The stepmother obtained letters of administration based on a petition erroneously alleging she was the mother. The first district reversed the trial court's ruling that the letters were void ab initio and held, "it is our view that Bush compels the voiding of letters of administration ab initio only where to rule otherwise would be detrimental to the estate or to persons having an interest in the estate." Id. at 1250. Such a finding is permissive, not mandatory, because there is "no rational basis in the case law for holding that actions in behalf of and beneficial to an estate by an administrator appointed through some procedural irregularity must be declared void where such a result is adverse to the estate." Id. The court also noted the lack of statutory provision mandating such action by the trial court. Id.
The Coopers argue that the present case differs from Estate of Retzel because, they claim, the voiding of Kelly's actions would not be adverse to the estate. In contrast, however, the trial court held in its final order:
It is undisputed that Melanie Kelly, as Personal Representative, instigated a claim against Martin Memorial Medical Center on behalf the Estate of Dorothy *689 Cooper, which resulted in a settlement offer of $100,000, which was ultimately accepted by the Successor Personal Representatives.
It is further undisputed that the actions of the law firms of Ford & Sinclair, P.A., and Philip [DeBerard], in arriving at a novel cause of action and negotiating the settlement, brought the $100,000 into the assets of the Estate of Dorothy Cooper.
At the time of the settlement, the contract between Ford & Sinclair and Philip DeBerard, and the Estate of Dorothy Cooper, was completed.
Additionally, the fact that the Coopers were served with a Notice of Administration indicating that Kelly had been appointed P.R. demonstrates that Kelly was not attempting to do anything devious or without their knowledge. The parties clearly did not contemplate that the original letters would be declared void ab initio, since they later stipulated that Kelly would not be released from any liability for her actions while acting as P.R., and that she could still seek fees for her services as P.R.
Following the Florida Supreme Court's holding in In re Williamson's Estate and the first district's holding in Estate of Retzel, we hold that the trial court did not abuse its discretion in awarding attorney's fees and personal representative fees to Kelly and her attorneys, where the revocation of the letters of administration was based on a later produced will and Kelly's actions benefited the estate.
The Coopers' second argument is that the trial court erred by awarding Kelly's attorneys' fees based on the written contingency fee contract. "Any attorney who has rendered services to an estate may be awarded reasonable compensation from the estate." § 733.106(3), Fla. Stat. Courts have interpreted this provision as requiring that the services benefit the estate. See, e.g., In re Estate of Lewis, 442 So.2d 290, 292 (Fla. 4th DCA 1983). "`Benefit' may refer to services that bring about an enhancement in value or an increase in value of the estate." Dew v. Nerreter, 664 So.2d 1179, 1180 (Fla. 5th DCA 1995). As discussed infra, the trial court found that Kelly's attorneys developed a novel claim and negotiated a $100,000 settlement offer from the hospital which undisputedly benefited the estate.
The Coopers allege that the contingency fee contract between Kelly and her attorneys violates rule 4.1-5(f) of the Florida Bar's Rules of Professional Conduct, which provides that "a contingency fee agreement shall be in writing" and shall be "signed by the client." The Florida Supreme Court held in Chandris v. Yanakakis, 668 So.2d 180, 185-86 (Fla.1995) "that a contingent fee contract entered into by a member of The Florida Bar must comply with the rule governing contingent fees in order to be enforceable." The Court also stated that "the attorney would still be entitled to the reasonable value of his or her services on the basis of quantum meruit." Id. at 186 n. 4.
The Coopers argue that the contingency fee agreement violates rule 4.1-5(f) because Kelly signed it before she was appointed as P.R. and, moreover, Kelly should never have been appointed P.R. The Coopers conclude that since they were the sole beneficiaries of the decedent's estate, they were the only parties entitled to a P.R. appointment and, since they did not sign the contingency fee agreement, Kelly and her attorneys violated rule 4-1.5(f) and should not be awarded contingent fees. The Coopers cite no authority to support their position that the contingency fee is invalid under rule 4.1-5(f) because Kelly signed the contract before she was *690 appointed P.R. and we cannot find any support for that conclusion. Rather, we analogize the issue of avoiding Kelly's contingency fee contract to the decision of whether to render the original letters of administration void, and, likewise, we conclude the decision is permissive, not mandatory, depending on whether there has been a benefit to the estate. See Estate of Retzel. Here, where the estate clearly benefited from the $100,000 settlement offer obtained through Kelly's attorneys pursuant to the contingency contract, we hold that the trial court did not err by awarding Kelly's attorneys' fees based on that contract, especially in this case where the testimony at the hearing clearly demonstrated that both Kelly and her lawyers understood that she entered into the contract as potential P.R. to pursue a possible claim on behalf of the estate, not in her individual capacity, and that any award would go to the estate, not to Kelly.
The Coopers argue that Kelly's attorneys should receive no more than an hourly lodestar fee determination because, at best, they should be considered discharged for cause and the fee will be paid by a third party who had no part in the fee arrangement. Where an attorney who has a written contingency fee agreement is discharged for cause, his fees are based on the quantum meruit fee reduced by the amount of the damages suffered by the client as a result of the lawyer's breach. Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Scheller, 629 So.2d 947, 954 (Fla. 4th DCA 1993); Kushner v. Engelberg, Cantor & Leone, P.A., 699 So.2d 850 (Fla. 4th DCA 1997). The court must consider several factors in determining a quantum meruit award, taking into account the value of the services to the client. Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz, 652 So.2d 366, 369 (Fla.1995).
The present case is distinguishable from the cases cited by the Coopers because here there was no attempt to discharge Kelly's attorneys until after they negotiated the settlement offer. As the trial court correctly held, "At the time of the settlement, the contract between Ford & Sinclair and Philip DeBerard, and the Estate of Dorothy Cooper, was completed." The contingency requirement had been met and the attorneys were entitled to rely upon the provisions of the written contingency fee contract to determine the amount of their fee. See Forman v. Kennedy, 156 Fla. 219, 22 So.2d 890 (1945); Milton Kelner, P.A. v. 610 Lincoln Road, Inc., 328 So.2d 193 (Fla.1976); Restivo v. Anderson & Anderson, P.A., 453 So.2d 1167 (Fla. 4th DCA 1984). While the Coopers present an interesting middle ground whereby Kelly's attorneys would still receive compensation for the $100,000 settlement they negotiated for the benefit of the estate in the form of quantum meruit fees, there is no support for their position that the attorneys should be considered discharged with cause and, moreover, the case law demonstrates that if an attorney is discharged after the contingency has already occurred, the attorney can rely on the contingency agreement for his fee. Therefore, we affirm the award of Kelly's attorneys' fees based on the contingency fee contract. Further, the Coopers' attorneys' argument that additional work had to be done by them after the Coopers were substituted for Kelly, did not alter the value of the $100,000 settlement offer to the estate nor does it change the result reached here.
The Coopers' final argument is that the trial court abused its discretion by awarding Kelly's fee for her role as P.R. The standard of review is whether the trial court abused its discretion in determining the propriety of the fee. Sitomer v. First *691 of Am. Bank-Central, 667 So.2d 456 (Fla. 4th DCA 1996). Section 733.617, Florida Statutes, provides for compensation to the P.R. for ordinary services. The Coopers argue, however, that Kelly did not participate in any of the normal duties of a P.R., such as arranging for funeral services or filing an inventory. Rather, Kelly's only actions as P.R. consisted of hiring the attorneys who obtained the $100,000 settlement on behalf of the estate. The Coopers' argument fails because it ignores the fact that the trial court applied the statutory compensation rate of 3% only to the net recovery that Kelly's participation provided to the estate, i.e., the $66,666 recovery after the reduction for her attorneys' fees. In contrast, section 733.617 provides that "[t]he commission shall be based on the compensable value of the estate, which is the inventory value of the probate estate assets and the income earned by the estate during administration." By applying the statutory commission rate only to the net assets Kelly brought into the estate, rather than to the value of the estate itself, the trial court implicitly recognized and accounted for the fact that Kelly's duties as P.R. were narrowly confined. Therefore, the trial court did not abuse its discretion in finding that Kelly acted in the best interest of the estate and in awarding Kelly P.R. fees calculated solely on the net recovery she brought to the estate.
Accordingly, we affirm the order of the trial court in all regards.
GUNTHER and STONE, JJ., concur.