DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ESTATE OF REONTRE'YH ALONZAE POUNDS,**
Appellant,

v.

**MILLER & JACOBS, P.A.,**
Appellee.

No. 4D21-1362

[January 5, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura Johnson, Judge; L.T. Case No. 502020CP004408XXXXMB.

Mallorye G. Cunningham of the Law Office of Mallorye G. Cunningham, P.A., West Palm Beach, for appellant.

Mark J. Miller of Miller & Jacobs, Pompano Beach, for appellee.

GROSS, J.

On July 17, 2020, Reontre'yh Pounds died in a motor vehicle accident. He died intestate and had no surviving spouse. His sole heir was his minor child. D'Vaunyia Greenland is the child's mother. Tijuana Pounds is the decedent's mother.

The circuit court litigation arose from a dispute over the proceeds of a wrongful death settlement. We reverse the order of the circuit court that attempted to resolve the case, and we remand for further proceedings.

### The Decedent's Mother's Contingency Fee Agreement with Miller & Jacobs

Eleven days after the accident, Pounds entered into a contingency fee agreement with the law firm of Miller & Jacobs to prosecute a wrongful death claim. She authorized Miller & Jacobs to investigate, negotiate, and resolve the matter on behalf of the decedent's Estate, which had not yet been opened.

### *Greenland's Contingency Fee Agreement with Attorney Cunningham*

Thirteen days after the accident, Greenland entered into a contingency fee agreement with the Law Office of Mallorye Cunningham to prosecute a wrongful death claim. Cunningham sent a letter to GEICO requesting insurance coverage information, but the record does not show that she took other actions to pursue the wrongful death claim.

### *Miller & Jacobs Obtains $145,000 in Settlement Proceeds*

By mid-September 2020, Miller & Jacobs had obtained the bodily injury policy limits from the insurers of four separate tortfeasors, recovering a total of $145,000 in settlement proceeds on behalf of the Estate. The funds were deposited into the firm's trust account.

### *Greenland's Petition for Administration and Appointment as Personal Representative*

On September 28, 2020, Greenland, represented by Cunningham, filed a petition for administration of the Estate, alleging that no person had equal or higher preference than Greenland to be appointed personal representative.

The trial court issued letters of administration and appointed Greenland as personal representative.

Two days after Greenland's appointment, Cunningham sent a demand letter to Miller & Jacobs, claiming that the law firm lacked the legal authority to represent the Estate because the personal representative of the Estate did not sign a written contingency agreement for the firm's services. Cunningham further claimed that any funds which Miller & Jacobs collected from the insurance companies on the Estate's behalf were obtained by negligent misrepresentation. She demanded that Miller & Jacobs release the entire $145,000 in settlement proceeds. Miller & Jacobs rejected the demand.

### *Greenland's Petition for Relinquishment of Settlement Proceeds*

Greenland, as personal representative of the Estate, petitioned the circuit court for an order requiring Miller & Jacobs to relinquish the settlement proceeds to the Estate or deposit the money into the court registry. Citing Florida Rule of Professional Conduct 4-1.5(f)(2), Greenland asserted that Miller & Jacobs "should not participate in any legal fees" because she never signed any contingency agreement with the firm to

represent the Estate, despite multiple emails from the firm requesting her to sign such an agreement. She alleged that Pounds entered into a contingency contract with Miller & Jacobs without her knowledge and consent.

Pounds responded in opposition to Greenland's petition for relinquishment of the settlement proceeds, and moved for a determination of her counsel's entitlement to attorney's fees and costs. Pounds alleged that she had the intent to serve as personal representative of the Estate when she executed the written retainer agreement with Miller & Jacobs. Relying upon *Cooper v. Ford & Sinclair, P.A.*, 888 So. 2d 683 (Fla. 4th DCA 2004), Pounds argued that, as a prospective personal representative, she was "able to execute a contingency fee agreement on behalf of the Estate prior to the [E]state being opened, so long as the Estate would have been solely benefited from the resulting settlement obtained by [Miller & Jacobs], and no settlement proceeds would be distributed to [her]." Pounds further argued that it would be unjust enrichment to award Cunningham any portion of the contingency fee, because it had been earned by the efforts of Miller & Jacobs.

### *Pounds's Motions to Set Aside Greenland's Appointment*

Meanwhile, Pounds moved to set aside Greenland's appointment as personal representative and to revoke the letters of administration. She alleged that she told Greenland of her preference to serve as personal representative for her late son's Estate, but that Greenland went behind her back and petitioned the court for appointment as personal representative without providing any notice to her.

The circuit court denied Pounds's motion without prejudice, as formal notice of the motion was not provided to Greenland.

Pounds then moved to revoke Greenland's appointment and to appoint Pounds as personal representative, raising similar grounds as the original motion to set aside Greenland's appointment. Pounds alleged that she was best suited to serve as personal representative and that Greenland had not been appointed as the guardian of the minor child's property. Greenland received formal notice of this motion, which is still pending in the circuit court.

### *Hearing on the Petition for Relinquishment of Settlement Proceeds*

The circuit court held a non-evidentiary hearing on Greenland's petition for relinquishment of the settlement proceeds. The lawyers on both sides

3

made numerous unsworn factual assertions. The two sides presented very different versions of whether Greenland acquiesced to Miller & Jacobs's entry into the case. However, Greenland's counsel acknowledged that a guardianship had not yet been established for the property of the minor child.

### *Order on Appeal*

Following the hearing, the trial court entered an order denying in part Greenland's petition for relinquishment of the settlement proceeds. The court found that Miller & Jacobs was operating in good faith and was lawfully retained pursuant to a written contingency fee contract with Pounds, who intended to serve as personal representative of the Estate. The court further found that prior to the court's appointment of a personal representative, Miller & Jacobs procured a $145,000 benefit for the Estate.

Concluding that *Cooper* was directly on point, the court determined that: (1) Miller & Jacobs was entitled to its contingency fee of $48,285 because "the contingency contract upon which the representation was based has been met"; and (2) Pounds was entitled to 3% of the net benefit of the settlement proceeds for her participation in procuring a benefit to the Estate prior to the court's appointment of a personal representative. This appeal ensued.

### *Was Greenland Properly Appointed as Personal Representative?*

As a threshold matter, the Estate argues that Greenland was properly appointed as personal representative. But the trial court has not yet definitively ruled on that issue, as Pounds's motion to revoke the letters of administration and set aside Greenland's appointment is still pending.

Generally, "no notice need be given of the petition for administration or the issuance of letters when it appears that the petitioner is entitled to preference of appointment as personal representative." Fla. Prob. R. 5.201(a). However, "[b]efore letters shall be issued to any person who is not entitled to preference, formal notice must be served on all known persons qualified to act as personal representative and entitled to preference equal to or greater than the applicant, unless those entitled to preference waive it in writing." Fla. Prob. R. 5.201(b).

Here, the issue of whether the letters of administration were properly issued turns on whether Greenland had preference over Pounds to serve as personal representative.

4

Section 733.301(1)(b), Florida Statutes (2020), provides that the following order of preference shall be observed in granting letters of administration:

(b) In intestate estates:

1. The surviving spouse.

2. The person selected by a majority in interest of the heirs.

3. The heir nearest in degree. If more than one applies, the court may select the one best qualified.

Furthermore, "[a] guardian of the property of a ward who if competent would be entitled to appointment as, or to select, the personal representative may exercise the right to select the personal representative." § 733.301(2), Fla. Stat. (2020).

A "guardian of the property of a ward" is not equivalent to a "natural guardian." *In re Estate of Fisher*, 503 So. 2d 962, 964 (Fla. 1st DCA 1987). "Except to the extent provided in Section 744.301, Florida Statutes, a natural guardian is entitled to the charge only of the person, not of the estate of the ward." *Id.* Thus, in *Fisher*, the court held that the unmarried mother of the decedent's son, having never been appointed as "guardian of the property" of the child, was not entitled to exercise the right to select the personal representative under section 733.301, even though she was the "natural guardian" of the child.[1] *Id.*

In this case, the minor child is the decedent's only heir. Although Greenland is the natural guardian of the decedent's minor child, she has never been appointed as "guardian of the property" of the child and thus is not entitled to exercise the right to select the personal representative under section 733.301(2). Accordingly, the Estate is incorrect to argue that Greenland was the "apparent" or "statutorily preferred" personal representative.

Because no "guardian of the property" of the minor child had been appointed at the time Greenland became the personal representative,

---

[1] We note that, in *Fisher*, the mother of the decedent's son was herself a minor when the decedent's mother was appointed as personal representative and thus was not entitled to preference over the decedent's mother at the time of the initial appointment. *Id.*

neither Greenland nor Pounds currently has any preference over the other to serve as personal representative.

Pounds's motion to revoke letters of administration is still pending, and the circuit court still needs to resolve who will serve as personal representative. As explained below, the determination of who will serve as personal representative could affect the validity of Pounds's contingency fee agreement with Miller & Jacobs.

### *The Validity of the Miller & Jacobs Contingency Fee Agreement*

To determine the validity of Pounds's contingency fee agreement with Miller & Jacobs, we examine (1) the interplay of the Florida Bar Rules with the Florida Probate Code, and (2) the application of the case upon which the circuit court relied, *Cooper v. Ford & Sinclair P.A.*, to this case.

"Any attorney who has rendered services to an estate may be awarded reasonable compensation from the estate." § 733.106(3), Fla. Stat. (2020). The Florida Probate Code anticipates valid negotiations of a wrongful death claim prior to court involvement. *Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 674 (Fla. 2004). "Specifically, the legal acts of a personal representative relate back after court appointment, thereby validating the previous acts of the personal representative on behalf of the estate. Thus, the statutory schemes governing both minor and estate claims contemplate the completion of settlement negotiations prior to court approval." *Id.* at 675 (internal citations omitted).

The relation-back doctrine is codified in section 733.601, Florida Statutes (2020), which governs the time of accrual of the powers and duties of a personal representative:

> The duties and powers of a personal representative commence upon appointment. The powers of a personal representative relate back in time to give acts by the person appointed, occurring before appointment and beneficial to the estate, the same effect as those occurring after appointment. A personal representative may ratify and accept acts on behalf of the estate done by others when the acts would have been proper for a personal representative.

Thus, under section 733.601, acts occurring before appointment of the personal representative can be validated in either of two ways: (1) the personal representative's own acts, occurring before appointment and beneficial to the estate, will relate back and have the same effect as those

6

occurring after appointment; or (2) the acts on behalf of the estate done by others may be ratified and accepted by the personal representative when the acts would have been proper for a personal representative.

This case also implicates Florida Rule of Professional Conduct 4-1.5(f), which requires that every lawyer who enters into a contingency fee agreement "must do so only where the fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client." R. Regulating Fla. Bar 4-1.5(f)(2). "No lawyer or firm may participate in the fee without the consent of the client in writing." *Id.* "The client must be furnished with a copy of the signed contract and any subsequent notices or consents." *Id.*

Rule 4-1.5(f) creates a practical difficulty in situations where an attorney is hired to prosecute a wrongful death claim before any person is authorized to sign a contingency fee agreement on behalf of the client.

In *Cooper*, we affirmed a probate court's award of contingency fees to attorneys who successfully settled a wrongful death claim on behalf of the decedent's estate, even though (1) the decedent's great niece, Kelly, signed the contingency fee agreement before she was appointed as personal representative, and (2) Kelly's letters of administration were eventually revoked. 888 So. 2d at 684–90. We concluded that Kelly's letters of administration were merely voidable, rather than void ab initio, where they were revoked due to the production of a previously-undisclosed will. *Id.* at 688. Accordingly, we held that "the trial court did not abuse its discretion in awarding attorney's fees and personal representative fees to Kelly and her attorneys, where the revocation of the letters of administration was based on a later produced will and Kelly's actions benefited the estate." *Id.* at 689.

In rejecting the argument that the contingency fee agreement between Kelly and her attorneys was invalid under Rule 4-1.5(f), we reasoned:

> The Coopers argue that the contingency fee agreement violates rule 4.1–5(f) because Kelly signed it before she was appointed as P.R. and, moreover, Kelly should never have been appointed P.R. The Coopers conclude that since they were the sole beneficiaries of the decedent's estate, they were the only parties entitled to a P.R. appointment and, since they did not sign the contingency fee agreement, Kelly and her attorneys violated rule 4–1.5(f) and should not be awarded contingent fees. ***The Coopers cite no authority to support their position that the contingency fee is invalid under***

***rule 4.1–5(f) because Kelly signed the contract before she was appointed P.R. and we cannot find any support for that conclusion.*** Rather, we analogize the issue of avoiding Kelly's contingency fee contract to the decision of whether to render the original letters of administration void, and, likewise, we conclude the decision is permissive, not mandatory, depending on whether there has been a benefit to the estate. Here, where the estate clearly benefited from the $100,000 settlement offer obtained through Kelly's attorneys pursuant to the contingency contract, ***we hold that the trial court did not err by awarding Kelly's attorneys' fees based on that contract, especially in this case where the testimony at the hearing clearly demonstrated that both Kelly and her lawyers understood that she entered into the contract as potential P.R. to pursue a possible claim on behalf of the estate, not in her individual capacity, and that any award would go to the estate, not to Kelly.***

*Id.* at 689–90 (internal citation omitted; emphasis added).

Finally, because "there was no attempt to discharge Kelly's attorneys until after they negotiated the settlement offer," we explained that "[t]he contingency requirement had been met and the attorneys were entitled to rely upon the provisions of the written contingency fee contract to determine the amount of their fee." *Id.* at 690.

Here, in the current posture of this case, the trial court erred in awarding a contingency fee to Miller & Jacobs based on the contingency fee agreement with Pounds, because (1) Pounds was never appointed as personal representative, and (2) Greenland, the personal representative, has not ratified Pounds's fee agreement with Miller & Jacobs. *See* § 733.601, Fla. Stat. (2020).

*Cooper* is limited by section 733.601 to its facts. *Cooper* does not stand for the proposition that a contingency fee agreement with a potential personal representative is enforceable even if the signatory is never appointed as personal representative and even if the personal representative does not ratify the agreement. Instead, *Cooper* is best understood as a case that applied the relation-back doctrine to validate the actions of a potential personal representative who later served as personal representative for a period of time.

To be enforceable, a contingency fee agreement to pursue a wrongful death claim before an estate has been opened must either (1) be signed by

a person who later becomes personal representative or (2) be ratified by the eventual personal representative if it was signed by someone else. For example, in *Cooper*, Kelly's powers as personal representative related back to her act of signing the contingency fee agreement before her appointment and had the same effect as though it occurred after her appointment. Indeed, the personal injury attorney in *Cooper* recognized this in his testimony, explaining that "[i]f the person who signs our contract is appointed personal representative, that's good enough." *Id.* at 685.

We reject Miller & Jacobs's argument that Greenland's alleged acquiescence to its representation justified the trial court's ruling. For one thing, there has been no evidentiary hearing to determine whether Greenland acquiesced to the firm's representation. However, even assuming Miller & Jacobs's factual assertions regarding Greenland's conduct are true, mere acknowledgment of representation is insufficient to constitute ratification of a contingency fee agreement—instead, to suffice for ratification, there must be a "positive and explicit" promise to honor the agreement. *See O'Malley v. Freeman*, 241 So. 3d 204, 207 (Fla. 4th DCA 2018) (holding that a client's post-coma conversations with his attorney about the client's lawsuit were insufficient to ratify a contingency fee agreement that the client's mother had signed while he was in a coma). In this case, Miller & Jacobs has not advanced any argument that Greenland ratified the contingency fee agreement with Pounds by making a "positive and explicit" promise to honor the agreement.

On remand, the circuit court should rule upon Pounds's motion to revoke letters of administration. If the court were to grant that motion and appoint Pounds as personal representative, then Miller & Jacobs would be entitled to enforce the contingent fee contract under *Cooper*.

If the court denies the motion to revoke letters of administration and Greenland does not ratify the contingent fee contract, the law firm would still be entitled to the reasonable value of its services "on the basis of quantum meruit." *Chandris, S.A. v. Yanakakis*, 668 So. 2d 180, 186 n.4 (Fla. 1995).

We decline to reach the issue of whether Cunningham is entitled to any attorney's fees in connection with the wrongful death claim. There has been no evidentiary hearing addressing her contribution to the recovery, and the circuit court has not yet ruled on the issue.

We reverse the order on appeal without prejudice to the circuit court reconsidering the enforceability of Pounds's contingent fee agreement with Miller & Jacobs after ruling on Pounds's motion to revoke letters of

administration. If the fee agreement is unenforceable, the court should award a quantum meruit fee to Miller & Jacobs for the reasonable value of its services in securing the wrongful death settlements.

### *The Award of a Personal Representative Fee to Pounds*

We agree with the Estate that the trial court erred in awarding Pounds the 3% personal representative fee where she was never appointed as personal representative.

"A personal representative shall be entitled to a commission payable from the estate assets without court order as compensation for ordinary services." § 733.617(1), Fla. Stat. (2020).

"A commission computed on the compensable value of the estate is presumed to be reasonable compensation for a personal representative in formal administration as follows: (a) At the rate of 3 percent for the first $1 million." § 733.617(2)(a), Fla. Stat. (2020).

In *Cooper*, we rejected the argument that the trial court should not have awarded Kelly a fee for her role as personal representative, holding that "the trial court did not abuse its discretion in finding that Kelly acted in the best interest of the estate and in awarding Kelly P.R. fees calculated solely on the net recovery she brought to the estate." 888 So. 2d at 691.

Here, the trial court erred in awarding Pounds a personal representative fee where she never served as personal representative. There is no statutory authority for awarding a personal representative fee to someone who has not served as personal representative. *Cooper* is distinguishable because, in that case, Kelly served as personal representative for a period of time and was thus entitled to a personal representative fee where she procured a benefit to the estate by pursuing a wrongful death claim.

By contrast, although Pounds's actions benefited the Estate, she has never served as personal representative. Thus, based on the current posture of this case, it was premature to award her a personal representative fee.

As noted above, however, the circuit court still has not ruled upon the pending motion to revoke letters of administration. If the trial court were to grant Pounds's motion and appoint her as personal representative, she would be entitled to a personal representative fee pursuant to *Cooper*.

10

We reverse the award of a personal representative fee to Pounds without prejudice to the trial court awarding Pounds such a fee if the court grants her motion to revoke letters of administration and appoints her as personal representative.

*Reversed and remanded for further proceedings consistent with this opinion.*

DAMOORGIAN and CIKLIN, JJ., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

11