WARNER, J.
 

 The issue presented in this case is whether an attorney not licensed to practice law in Florida, but who provided legal services in Florida in a probate and trust matter, is entitled to collect the quantum meruit value of his fee in an amount in excess of one million dollars. We hold that it violates public policy for a court to award a fee, even in quantum meruit, for the unlicensed practice of law. We reverse.
 

 During the pendency of a divorce, appellant Carla Morrison’s husband, Pedro, died of a heart attack, leaving a very substantial estate. Carla Morrison (“Morrison”) was the beneficiary of a pour-over trust established by Pedro. The trust named Morrison as the income beneficiary and named her husband’s brother, Carlos, as trustee and his nephew, Tommy, as the remainder beneficiary. Disputes arose between Morrison, as the income beneficiary, and Carlos, the trustee, regarding the trust.
 

 Initially, Morrison hired Gary Woodfield of the law firm of Edwards, Angelí, Palmer & Dodge to represent her on estate matters. One of the matters on which Woodfield began work in June of 2004 was a demand that the trust increase the amount of income to be paid to Morrison. Apparently, somewhat dissatisfied with Woodfield, Morrison learned about attorney William West through a friend. She contacted West, who was licensed to practice in North Carolina, but not in Florida. West agreed to investigate the case in exchange for a $10,000 fee and reserved the right to modify the fee arrangements if the scope of his engagement changed.
 

 West specializes in complex transactions requiring substantial accounting knowledge. He has appeared pro hac vice in Florida cases involving complex commercial transactions. However, he admitted that he had no experience in Florida probate or trust law. After being contacted by Morrison, he purchased a book on trust law in Florida and spoke to its author in order to acquaint himself with Florida requirements.
 

 On August 12, 2004, West wrote a letter to Morrison acknowledging that he would need to be admitted in Florida pro hac vice and to associate with Florida counsel. The next day he traveled to West Palm Beach to begin his investigation and stayed three days.
 

 Morrison gave West a check for $10,000 which he considered his investigative fee. After West completed his initial investigation he faxed a letter to Morrison in which he agreed to attempt to increase the amount of income she was receiving from the trust and also to try to terminate one or more of the trusts. West acknowledged in the letter that, because he was not licensed to practice in Florida, he would need outside counsel to assist him. He also indicated that his fee would be 22.5% of all increases which Morrison would receive above the current monthly income of $50,000 that she was already receiving. In fact, Morrison was actually already receiving $85,000 monthly at that time. Morrison signed the agreement with West. As a result, West billed Morrison for the 22.5% of the $35,000 increase in her income, for a total of $31,500 through December 2004, even though the increase in income was not attributable to any work that West had performed.
 

 In another letter to Morrison, he again noted that he was not a member of the Florida Bar and would have to secure the services of another attorney in Florida.
 

 
 *564
 
 To secure representation, in September, 2004, West contacted McDonald & Crawford, lawyers he knew in Fort Lauderdale who had expertise in probate and trust matters. He drafted a motion to appear pro hac vice and sent it to this firm. A lawyer with the firm had telephone discussions with West, but West never retained the firm after McDonald sent West an email wanting to firm up a fee agreement with West. No motion was submitted to the court to admit West for practice in the probate proceedings.
 

 Thereafter West represented Morrison in Florida at pre-suit mediation on November 22, 2004.
 
 [1]
 
 The mediation resulted in a handwritten settlement agreement settling Morrison’s disputes with the estate and the trust. On January 19, 2005, the day before a hearing to approve the settlement, West brought the typed version of the settlement agreement to Morrison’s home to sign. Paragraph 8 of the settlement agreement states, “One million dollars paid to Carla on closing date from Trust, before Q-TIP is funded.” Along with the settlement agreement, West brought another paper for her signature which obligated Morrison to write a check to West in the amount of $1,000,000. Morrison testified that when she saw that paper, things came to a screeching halt. Early the next morning she fired West. She called Woodfield, her prior lawyer, and re-hired him to represent her at the probate confirmation hearing scheduled for later that day. Woodfield asked West to attend the hearing to answer any questions about the settlement terms. West faxed him a letter indicating that he would attend because he had a $1,000,000 fee interest in the case.
 

 At the hearing the probate judge approved the settlement and required the $1,000,000 to be placed into Woodfield’s trust account. Later, this amount was disbursed to Morrison. Although the court subsequently ordered her to return the funds to the trust account, she was unable to do so.
 

 Thereafter Morrison filed suit against West seeking a declaratory judgment that he had engaged in the unlicensed practice of law and was not entitled to fees for services. She also sought a refund of the fees she had already paid him. Morrison alleged that the Settlement Agreement was silent as to any fee or payment to West and that the $1,000,000 was to be paid to her, not West. Morrison contended that because West is not an attorney licensed in Florida, his fee agreement with Morrison was void ab initio and could not be enforced.
 

 West filed a counterclaim seeking a declaration that he was entitled to the $1,000,000 fee and included counts for breach of contract, constructive trust, promissory estoppel, and unjust enrichment. After a trial on the merits, the court found that West engaged in the unauthorized practice of law and that his retainer agreement was void ab initio. The court found that West was not licensed to practice in Florida and had agreed to represent Morrison without associating with a Florida law firm or being admitted pro hac vice. The court accepted West’s testimony that the $1,000,000 in the settlement agreement constituted West’s fee. The court did not find the $1,000,000 amount to be unreasonable, because West had achieved Morrison’s objectives. The court ruled that allowing Morrison to retain the fruits of West’s representation without compensation would be unjust enrichment and awarded West a quantum meruit recovery of $1,000,000. From this final judgment, Morrison appeals the
 
 *565
 
 quantum meruit award, and West cross-appeals the finding that the contingency fee contract was void ab initio.
 

 The trial court appropriately recognized that West’s letter contract with Morrison was void ab initio based upon
 
 Chan-dris, S.A. v. Yanakakis,
 
 668 So.2d 180 (Fla.1995). In
 
 Chandris
 
 our supreme court held that entering into a contingent fee contract to provide legal services in Florida by an attorney not authorized to practice in this state was void ab initio unless the services provided fit into one of the exceptions permitted in
 
 Florida Bar v. Savitt,
 
 363 So.2d 569 (Fla.1978). Those exceptions generally require association with a Florida attorney, or involve the communication of advice related to the application of federal law to a transaction or representation in federal administrative proceedings. None of the exceptions permit an attorney not authorized to practice law in Florida to dispense advice to, or provide representation of, Florida clients with respect to Florida law and proceedings.
 

 The supreme court explained its holding in
 
 Chandris
 
 as supporting policy concerns related to protection of the public. The prohibition on the unauthorized practice of law in Florida derives not only from the Rules of Professional Conduct, but also from statutory law. The court in
 
 Chandris
 
 noted that section 454.23, Florida Statutes (1983), provided that “[a]ny person not licensed or otherwise authorized by the Supreme Court of Florida who shall practice law ... shall be guilty of a misdemeanor of the first degree.”
 
 [2]
 
 Relying on long established precedent requiring admission to the bar, the court said:
 

 Florida has a unified bar, and all persons engaged in the practice of law here must be members of that bar.
 
 Petition of Florida State Bar Ass’n,
 
 40 So.2d 902 (Fla.1949). More than thirty years ago, we enunciated why we prohibit those who are not members of The Florida Bar from engaging in professional activities in Florida which are within the boundaries of the practice of law. This Court noted in
 
 State ex rel. Florida Bar v. Sperry,
 
 140 So.2d 587, 595 (Fla.1962),
 
 rev’d on other grounds,
 
 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), that:
 

 The reason for prohibiting the practice of law by those who have not been examined and found qualified to practice is frequently misunderstood. It is not done to aid or protect the members of the legal profession either in creating or maintaining a monopoly or closed shop. It is done to protect the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control in the matter of infractions of the code of conduct which, in the public interest, lawyers are bound to observe.
 

 Chandris,
 
 668 So.2d at 184. Despite the experience and qualifications of the unlicensed lawyer in
 
 Chandris,
 
 the court held that he could not recover under a contingent fee contract.
 

 In a footnote, the court conceded that while a
 
 member of The Florida Bar
 
 may not claim attorney’s fees under a void contingent fee agreement, a Florida Bar member may still be entitled to the reasonable value of his or her services in quantum meruit.
 
 Id.
 
 at 186 n. 4. While West seeks to expand this footnote to claim entitlement to his quantum meruit fee, his interpretation is clearly wrong. While a con
 
 *566
 
 tract between a Florida Bar member and a client might be illegal, the Bar member’s provision of legal services in Florida is not illegal. In contrast, the provision of legal services by a non-Florida Bar member
 
 is
 
 illegal.
 
 See
 
 § 454.23, Fla. Stat. To award fees for illegal activities is contrary to public policy.
 
 See Spence, Payne, Mas-ington & Grossman, P.A. v. Philip M. Gerson, P.A.,
 
 483 So.2d 775 (Fla. 3d DCA 1986).
 

 We followed
 
 Chandris
 
 in
 
 Vista Designs, Inc. v. Silverman,
 
 774 So.2d 884 (Fla. 4th DCA 2001). Vista Designs retained Sil-verman to pursue patent infringement claims against another firm. Silverman was not licensed to practice law in Florida yet he had offices in Fort Lauderdale and New Jersey. The case proceeded to litigation in federal court in Florida, and Silver-man presented a litigation budget, indicating that he would be associating a Florida attorney. Ultimately, Vista Designs refused to pay Silverman who sued for his fees. Vista counterclaimed for disgorgement of fees previously paid to Silverman. Based upon
 
 Chandris,
 
 our court held that the oral contract of representation between Silverman and Vista Designs was void ab initio, because Silverman was not a member of The Florida Bar and had engaged in the unauthorized practice of law. We ordered the disgorgement of fees previously paid to Silverman, as Silverman’s unauthorized practice of law would have constituted a criminal offense, and public policy should not allow him to benefit from his own wrongdoing. We also specifically rejected his claim that he should be entitled to the quantum meruit value of his services.
 

 Vista Designs
 
 requires a reversal of the quantum meruit fee in this case. Although West attempts to distinguish
 
 Vista Designs
 
 from this case, we find his attempt inadequate. The client in
 
 Vista Designs
 
 testified that he did not know that Silver-man was not admitted to practice in Florida, even though Silverman testified that he did tell the client. Nevertheless, the fact that a client knows the attorney he employs is not admitted in Florida should not permit an unlicensed attorney from recovering for illegal activity. Allowing an attorney to recover fees for the unauthorized practice of law is a violation of
 
 public policy,
 
 irrespective of the private interests and understandings of the parties. The judicial power of this state should not be used to effectuate a violation of public policy.
 

 West argues that his activity was not illegal based upon the rules regulating The Florida Bar. When he entered into his contract for representation in August of 2004, Rule Regulating The Florida Bar 4-5.5 provided that “[a] lawyer shall not: (a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.” West makes the curious argument that because there was no regulation of his activities because he was not a licensed lawyer in Florida, he did not violate the regulation of the legal profession. This argument is specious. Rule 10-2.1 (c) of the rules in effect at the time West was representing Morrison provided that a “nonlawyer or nonattorney is an individual who is not a member of The Florida Bar.” A nonlawyer is not authorized to practice law in Florida.
 
 See Fla. Bar v. Rapoport,
 
 845 So.2d 874 (Fla.2003) (rejecting an argument that an attorney not licensed in Florida could represent clients in securities arbitration matters, concluding that rule 10-2.1(c) prohibited nonlawyers from practicing in Florida). Section 454.23, Florida Statutes, prohibits the unauthorized practice of law, and West •violated that provision.
 

 The supreme court amended Rule 4-5.5 in May, 2005, to permit multi-jurisdictional practice, and West suggests
 
 *567
 
 that his conduct was legal under the amended rule, which he suggests may be applied retroactively to authorize his conduct. We disagree that the rule can be applied retroactively. More fundamentally, West’s activity did not comply with the amended rule.
 

 The amended rule permits a lawyer admitted in another state to provide legal services on a temporary basis in Florida if the services are undertaken in association with a lawyer admitted to practice in Florida or if the lawyer or a person the lawyer is assisting is authorized by law or order to appear in such proceeding or
 
 reasonably expects to be so authorized.
 

 [3]
 

 West argues that he anticipated securing a Florida attorney but simply did not do so before the matter settled in mediation. Although in September 2004 West drafted a motion for appearance pro hac vice and forwarded it, and a proposed order for admission, to McDonald & Crawford, that Fort Lauder-dale firm was never actually retained by Morrison. After an e-mail from the firm to West discussing its fee, the Florida firm did not have further conversations with West until well after the mediation. In fact, West did not even seek pro hac vice admission to present the settlement agreement to the probate court for approval.
 
 [4]
 
 This can hardly be deemed a technical error when he was admitted pro hac vice in another case involving Morrison and the trust right before he was terminated by Morrison. He knew that such admission was necessary. We can only assume that he chose to ignore that essential requirement to avoid the payment of a fee to McDonald & Crawford. Regardless, he did not comply with Rule 4-5.5, and his representation of Morrison was unauthorized.
 

 As
 
 Chandris
 
 noted, “[t]he reason for prohibiting the practice of law by those who have not been examined and found qualified to practice ... is done to protect the public from being advised and represented in legal matters by unqualified persons over whom the judicial department can exercise little, if any, control....” 668
 
 *568
 
 So.2d at 184. West engaged in the unauthorized practice of law in Florida. He did not comply with the rules which would permit him to practice in association with the services of a Florida lawyer. The court erred in awarding West a quantum meruit fee for his illegal activities in this state.
 
 See Vista Designs,
 
 774 So.2d at 888;
 
 Spence, Payne, Masington & Gross-man, P.A.,
 
 483 So.2d at 778.
 

 We reverse the final judgment, and based upon
 
 Vista Designs,
 
 we also order the disgorgement of the fees paid by Morrison to West.
 

 Reversed.
 

 LEVINE, J., and McCANN, JAMES W., Associate Judge, concur.
 

 [1]
 

 . At mediation Carlos Morrison, the trustee, was represented by James Pressley, Jr.; Tommy Morrison, the nephew, was represented by Edward Downey.
 

 [2]
 

 . The legislature has since amended the statute to make such conduct a felony.
 
 See
 
 § 454.23, Fla. Stat. (2004).
 

 [3]
 

 . Rule 4-5.5, Rules Regulating The Florida Bar (2005), provides in relevant part: Unlicensed Practice of Law; Multijurisdic-tional Practice of Law
 

 * * *
 

 (c) Authorized Temporary Practice by Lawyer Admitted in Another United States Jurisdiction. A lawyer admitted and authorized to practice law in another United States jurisdiction ... may provide legal services on temporary basis in Florida that:
 

 (1) are undertaken in association with a lawyer who is admitted to practice in Florida and who actively participates in the matter;
 

 (2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;
 

 (3) are in or reasonably related to a pending or potential ... mediation ... in this or another jurisdiction and the services are not services for which the forum requires pro hac vice admission:
 

 (A) if the services are performed for a client who resides in or has an office in the lawyer's home state, or
 

 (B) where the services arise out of or are reasonably related to the lawyer’s practice in a jurisdiction in which the lawyer is admitted to practice; or
 

 (4)are not within subdivisions (c)(2) or (c)(3), and
 

 (A) are performed for a client who resides in or has an office in the jurisdiction in which the lawyer is authorized to practice, or
 

 (B) arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.
 

 [4]
 

 . West presented Morrison with the written settlement agreement only the day before the court hearing to approve it. He had not contacted any law firm to appear with him at that hearing.